IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JUSTIN COLORADO, *Appellant.*

No. 1 CA-CR 22-0290
FILED 8-17-2023

Appeal from the Superior Court in Coconino County
No. S0300CR202000557
The Honorable Ted Stuart Reed, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Brian R. Coffman
*Counsel for Appellee*

Coconino County Legal Defender's Office, Flagstaff
By Joseph Adam Carver
*Counsel for Appellant*

_____

## OPINION

Judge Andrew M. Jacobs delivered the opinion of the Court, in which Chief Judge David B. Gass and Judge Brian Y. Furuya joined.

_____

**J A C O B S, Judge:**

**¶1**　　　　The Arizona Supreme Court abolished the use of peremptory strikes in jury selection effective January 1, 2022.　As a result, parties must now rely solely upon strikes for cause in voir dire.

**¶2**　　　　This appeal asks us to decide whether, in light of the 2022 amendments, we should apply the traditional abuse-of-discretion standard to a trial court's decision on a motion to strike a juror for cause, or whether we should apply a *de novo* standard.　We disagree that the 2022 amendments suggest any modification of the traditional standard, and see no error in the trial court's application of it.　We thus affirm the trial court's denial of appellant Justin Colorado's motion to strike potential juror number eight (Juror #8) for cause and Colorado's conviction for first-degree murder.

## FACTS AND PROCEDURAL BACKGROUND

**¶3**　　　　In July 2020, the State charged Colorado with one count of first-degree murder, a domestic violence offense, alleging he shot and killed his girlfriend in Flagstaff the previous month.　Before trial began in May 2022, Colorado filed a motion seeking permission to exercise peremptory strikes despite their abolition on January 1, 2022.　*See* Ariz. Sup. Ct. Order No. R-21-0020 (Aug. 30, 2021) (amending Arizona Rules of Criminal Procedure 18.4 and 18.5).　The court denied his motion.

**¶4**　　　　The court, with the parties' input, then prepared case-specific questionnaires for potential jurors to complete and return before trial.　*See* Ariz. R. Crim. P. 16.3(c), (d)(4), 18.5(c).　The urging to use case-specific written questionnaires became part of the Arizona Rules of Criminal Procedure at the time of the 2022 amendments, as part of a unified scheme of changes.　*See* Ariz. R. Crim. P. 18.5(c) cmt. to 2022 amend.; Statewide Jury Selection Workgroup, Arizona Supreme Court Task Force on Jury Data Collection, Practices, and Procedures, Report and Recommendations, at 3

(2021)[1] (recognizing that case-specific questionnaires "will secure better quality information for the exercise of for-cause strikes"). The questionnaires here served their intended purpose by providing in-depth information for the parties and the court to use in analyzing whether to excuse potential jurors. Based on the questionnaire responses, the parties agreed to dismiss 159 potential jurors for cause or hardship, and the trial court granted the State's motion to strike one other for cause and denied Colorado's for-cause motion to strike another.

¶5 After that questionnaire-driven screening, 21 potential jurors—including Juror #8—appeared for additional voir dire. After the court followed up with the jurors regarding their availability for trial, the parties stipulated to remove four potential jurors for cause. The court then allowed counsel to continue voir dire directly with those who remained.

¶6 Juror #8 indicated on her questionnaire that the domestic violence alleged in this case and her previous work experience as a nurse at the Coconino County Sheriff's Office could make it difficult to serve as juror. Upon further questioning by the prosecutor, Juror #8 explained a trial was pending regarding an incident in which an acquaintance of hers was allegedly killed by a former boyfriend a year earlier in Flagstaff. When asked whether that experience "would be an issue" in being fair and impartial, Juror #8 responded, "I don't think so. . . . Not that I can tell." Defense counsel asked Juror #8 about her work experience at the Sheriff's Office, and she explained it would not affect her ability to serve as a juror in this case. Defense counsel then moved to strike Juror #8 for cause. The trial court denied the motion "at this time" subject to counsel's further questioning of Juror #8.

¶7 The court and counsel continued questioning Juror #8 outside the presence of other jurors. There, she provided more details about her relationship with the domestic violence victim in the other pending trial, and she indicated her concern for the victim's child in that case would "probably [make it] hard" to serve as a juror in this case "if there were children involved." Regarding her prior work experience at the Sheriff's Office, Juror #8 said she could be fair and impartial because she "no longer work[s] there," and she did not recognize any names of former co-workers on the witness list.

---

[1] Available at https://www.azcourts.gov/Portals/74/Jury%20TF/SJS%20 Workgroup/SJSW_Final%20Report%20and%20Recommendations_11_01_ 21.pdf?ver=QosXeyxN0xkk1IdwRQF-cw%3d%3d

¶8          After questioning ended, defense counsel renewed the motion to strike, to which the prosecutor objected.  Before ruling, the trial court asked whether the victim in this case had children.  Both counsel affirmed that she did not.  "Well, with that said," the court responded, "[Juror #8] was quite clear that she believes she can be fair and impartial.  I don't see anything [in] her demeanor or attitude or anything else that could be interpreted as other than that, being a truthful statement . . . ."  The court denied the renewed motion to strike.  Juror #8 served on the jury.

¶9          The only disputed issue of fact at trial was whether Colorado acted with premeditation when he shot and killed the victim.  *See* A.R.S. § 13-1105(A)(1) ("A person commits first degree murder if . . . [i]ntending or knowing that the person's conduct will cause death, the person causes the death of another person . . . with premeditation . . . .").  The jury deliberated and returned a guilty verdict on the first-degree charge, finding it was a domestic violence offense.  At sentencing, the court imposed a mandatory natural life prison term.  Colorado timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

I.          **Colorado's Argument that the Standard of Review for For-Cause Strikes Should Change is Unpersuasive.**

          A.          **Since 1864, Arizona Appellate Courts Have Deferred to Trial Court Assessments of Whether Potential Jurors Can Fairly Sit in Judgment, Because That Question Is Fact-Intensive.**

¶10          Colorado frames his challenge to the denial of his motion to strike Juror #8 for cause as an issue of standards of review.  He asks whether Arizona law should continue to apply abuse-of-discretion as the standard for reviewing the propriety of strikes for cause.  *See State v. Allen*, 253 Ariz. 306, 307 ¶¶ 41, 47 (2022) (applying abuse-of-discretion standard).  He urges us to apply instead a *de novo* standard that accords no such deference, and is typically used to review a trial court's rulings on matters of law or mixed questions of fact and law.  *See State v. Mendoza-Ruiz*, 225 Ariz. 473, 475 ¶ 6 (App. 2010) ("[W]e review the superior court's legal decisions de novo.").

¶11          Colorado argues Juror #8's answers to certain questions make it objectively clear she was unable to judge his case without bias.  While doing so, he likewise advocates for a new, assertedly more objective

4

standard that he argues would not unduly defer to a juror's subjective assertions that they lack disqualifying biases.

¶12        Colorado emphasizes, accurately, that Arizona case law often discusses whether to exclude a juror with reference to the juror's assurances of impartiality.  He then argues that an exclusively for-cause system of strikes is poorly served by caselaw relying (heavily, he claims) on juror assurances of impartiality, concluding that trial courts now lack "articulable legal standards" to guide their rulings on motions to strike for cause.  For this reason, he argues Arizona courts should henceforth review such strikes *de novo*.

¶13        We reject Colorado's argument in part because it disregards 160 years of Arizona legal history commending to the trial court—not jurors themselves—the duty and authority to assess and address juror bias.  That the trial court must excuse any juror who cannot act with impartiality has been part of Arizona law since the Howell Code's enactment in 1864.  *See e.g.*, Howell Code, ch. XI, §§ 319, 322 (1864)[2]; *see* Rev. Stat. Ariz.  Territory, Penal Code §§ 910(13), 915 (1901); *see also Leigh v. Territory*, 10 Ariz. 129, 133 (1906) ("[I]t is . . . for the court to determine whether or not [the] knowledge or information [a juror has about the case] has in fact brought about in the juror a state of mind which will prevent him from acting with entire impartiality."); *Brady v. Territory*, 7 Ariz. 12, 19 (1900) ("The challenge [for cause] raised an issue of fact upon which the court had to determine whether the nature and strength of the opinion formed [by the juror] was such as would prevent the juror from acting with entire impartiality," and "[t]he finding of the trial court upon that issue should not be set aside by the appellate court unless the error is manifest."); Ariz.  Code §§ 44-1313(j), -1314 (1939); Ariz. Rev. Code §§ 5035(13), 5036 (1928); Rev. Stat. Ariz., Penal Code §§ 1023(13), 1024–25 (1913); *see State v. Johnson*, 247 Ariz. 166, 197–99 ¶¶ 113–21 (2019); *State v. Tison*, 129 Ariz. 526, 533 (1981); *State v. Evans*, 120 Ariz. 158, 160 (1978); *State v. Narten*, 99 Ariz. 116, 121–22 n.1 (1965); *Burnett v. State*, 34 Ariz. 129, 135-36 (1928); *see also* Ariz. R. Crim. P. 219–20 (1956); Ariz. R. Crim. P. 18.4(b) 2018 cmt. (noting that the contemporary description for the standard first appeared in the 1973 Rules).

¶14        The current procedural rule governing challenges for cause is Arizona Rule of Criminal Procedure 18.4(b), which provides in relevant

---

[2] Territorial and historical statutes, codes, and rules are archived by the Arizona State Library, Archives and Public Records, a division of the Arizona Secretary of State, and made available through the Arizona Memory Project, https://azmemory.azlibrary.gov/.

part that: "The court, on motion or on its own, must excuse a prospective juror or jurors from service in the case if there is a reasonable ground to believe that the juror or jurors cannot render a fair and impartial verdict." The Arizona Supreme Court left this rule substantively unchanged when it eliminated peremptory challenges and revised related procedures for jury selection, strongly indicating it did not intend to change the law surrounding reasonable grounds for excusal.

¶15          Throughout Arizona's history, its courts have treated the trial court's determination of what requires excusal as a factual question calling for deference to the trial court. In 1900, the Arizona Supreme Court wrote that:

> The challenge [for cause] raised an issue of fact upon which the court had to determine whether the nature and strength of the opinion formed [by the juror] was such as would prevent the juror from acting with entire impartiality. *The finding of the trial court upon that issue should not be set aside by the appellate court unless the error is manifest.*

*Brady*, 7 Ariz. at 19 (emphasis added).

¶16          Six years later, the Arizona Supreme Court again underscored the fact-intensive nature of such an inquiry, calling it "a question which must be left largely to the wise discretion of the trial court" so that "the determination of the trial court in that regard will not be disturbed on appeal, unless it appears to be clearly erroneous." *Leigh*, 10 Ariz. at 133. And as noted above, in a decision postdating the abolition of peremptory challenges, the Arizona Supreme Court approvingly described the standard of review applicable to challenges to for-cause strikes as a deferential standard: "Reviewing courts defer to the trial judge's perceptions of the juror and question only whether the judge's findings are supported by the record." *See Allen*, 253 Ariz. at 307 ¶ 47. As such, Colorado's arguments are contrary to our appellate courts' longstanding view, still enshrined in Arizona law, that the trial court is in the best position to perceive and assess jurors and any biases the jurors may harbor. *See id.*

**B.    The 2022 Amendments Did Not Alter the Standard of Review, While Making the Trial Court's Inquiry in Voir Dire About Bias Even More Fact-Intensive.**

¶17          We also reject Colorado's position because the Arizona Supreme Court did not adopt a *de novo* standard of review when enacting

the 2022 amendments to Rules 18.4 and 18.5, which it could easily have done. *See Pierce v. Underwood*, 487 U.S. 552, 558 (1988) ("For some few trial court determinations, the question of what is the standard of appellate review is answered by relatively explicit statutory command," however, "[f]or most others, the answer is provided by a long history of appellate practice."). To the contrary, the amended Rules appear to contemplate the continued application of the abuse-of-discretion standard by requiring trial courts to conduct a holistic, fact-intensive inquiry when evaluating a juror's self-assurances of fairness, as they "consider *the totality* of a prospective juror's conduct and answers." Ariz. R. Crim. P. 18.5(h) (emphasis added).

**¶18** Colorado's argument is also unpersuasive because it would undercut one of the lynchpins of the 2022 amendments. In eliminating peremptory challenges, the Arizona Supreme Court was careful to put in place structures that would provide additional data from which the trial court could investigate actual bias in jurors. As noted, Rule 18.5(c) now urges the use of "case-specific written questionnaire[s]" to provide ample data concerning potential jurors. Here, their use led to the excusal of a significant number of potential jurors, demonstrating the efficacy of this tool. But the Arizona Supreme Court also urged wide-ranging and open-ended discussions with potential jurors to allow for the most accurate assessment of bias by the trial court. Rule 18.5(f) requires the trial court to "conduct a thorough oral examination of the prospective jurors and control the voir dire examination." The 2022 Comment to Rule 18.5(f) goes further:

> When feasible, the court should permit liberal and comprehensive examination by the parties, refrain from imposing inflexible time limits, and use open-ended questions that elicit prospective jurors' views narratively. *The court should refrain from attempting to rehabilitate prospective jurors by asking leading, conclusory questions that encourage prospective jurors to affirm that they can set aside their opinions and neutrally apply the law.*

(Emphasis added.)

**¶19** The revised rules thus allow trial courts to develop a more robust factual record. Our trial courts have more facts to assess, more dialogue to consider before empaneling a juror, and more information from which to assess credibility before empaneling a juror. All those facts make motions to dismiss a juror for cause even more fact-specific than before. This robust factual record underscores the need for continued abuse-of-discretion review. The Comment to Rule 18.5(f) provides an especially

strong basis for rejecting Colorado's position. Its text discourages rote affirmations that a prospective juror is unbiased. This addresses Colorado's concern that Arizona law is somehow standardless because it reflects undue deference to unpersuasive, subjective assurances of no bias by potential jurors. Thus, Colorado's proposed *de novo* standard of review is not only contrary to our state's longstanding practice of deferring to the trial court but also contrary to the spirit, if not the letter, of the 2022 amendments the Arizona Supreme Court enacted.

¶20 Colorado also incorrectly suggests longstanding but deleted comments to Rule 18.4 support his argument against placing weight on potential jurors' assurances that they can be fair. He cites the pre-2022 comment to Rule 18.4(b), which provides that a party may base a challenge for cause on a "showing of facts from which an ordinary person would i[nfer] a likelihood of predisposition in favor of one of the parties." Though we agree the trial court remains free to infer bias from facts suggesting predisposition, the 2022 amendments removed the comment on which he relies. The 2022 amendments suggest the trial court is free to infer bias in jurors on any reasonable basis, not just the fifteen grounds suggesting bias previously enumerated in the deleted comment (some of which originated in Section 319 of the Howell Code).

### C. Colorado's Disagreement With Any Perceived Rehabilitation of Juror #8 Provides No Basis to Change the Standard of Review.

¶21 Colorado's complaint about the voir dire is, to some extent, one about rehabilitation. Here, the trial court learned certain facts concerning Juror #8's potential bias from her questionnaire responses and, given the questions they raised, engaged in colloquies with her before determining that she could sit fairly as a juror. The mere fact of rehabilitation provides no reason to change standards of review. Either the trial court or counsel may attempt through further individual questioning to seek more information to explore potential bias, which may rehabilitate a juror or strengthen the case to disqualify them. *See* Ariz. R. Crim. P. 18.5(f) ("Upon request, the court must allow the parties sufficient time, with other reasonable limitations, to conduct a further oral examination of the prospective jurors."). This further inquiry is not only permitted but is desirable because "[a] juror's preconceived notions or opinions about a case do not necessarily render that juror incompetent to fairly and impartially sit in a case." *State v. Martinez*, 196 Ariz. 451, 459 ¶ 28 (2000). Indeed, Rule 18.5(h) *requires* trial courts, when ruling on a motion to strike for cause, to elicit information from the subject juror relevant to the motion and to

consider "the totality of a prospective juror's conduct" when determining whether the juror can be fair and impartial. Ariz. R. Crim. P. 18.5(g), (h).

¶22    Addressing how this additional inquiry works, Colorado claims a juror's personal assurances of his or her impartiality are insufficient, standing alone, to reveal the juror's biases or preconceived notions of a defendant's guilt. We agree. But Arizona law already recognizes that insufficiency. *See, e.g., State v. Jimenez*, 2 CA-CR 2022-0062, at *2 ¶8, 2023 WL 4529422 (Ariz. App. July 13, 2023) ("[T]he court need not accept the subjective beliefs of challenged venirepersons regarding their ability to remain unbiased."); *State v. Smith*, 182 Ariz. 113, 115 (App. 1995) ("We do not suggest that whenever a juror utters the words, 'I think I can be fair,' the trial judge should deny a motion to strike for cause," because "[t]hese issues are not to be resolved by 'magic words.'"). Thus, as noted, trial courts must evaluate a juror's assurances of impartiality in the context of the totality of factors under consideration by the trial court, including a juror's demeanor and conduct. *State v. Glassel*, 211 Ariz. 33, 48 ¶ 50 (2005) ("Trial judges are permitted to determine a potential juror's credibility when deciding whether to strike a juror for cause."). If the juror's demeanor, conduct, or other factors give the court a reason to disbelieve his or her personal assurances of serving fairly and impartially, the court should strike the juror for cause. *See State v. Burns*, 237 Ariz. 1, 13 ¶ 23 (2015) ("A trial judge must consider the entirety of a prospective juror's demeanor and behavior; if a juror's promise to uphold the law is coupled with ambiguous statements and uncertainty, the trial judge may strike the juror for cause."). Failing to do so risks reversible error if the record shows the juror ultimately selected should have been stricken.

¶23    The trial court's closeness to juror demeanor drives our deference to its factual determinations. Arizona law commends to the trial court the task of weighing credibility when a juror gives assurances of impartiality. Trial courts observe and assess the juror personally, while we only read a record. We, therefore, appropriately defer to the trial court's credibility findings when ruling on motions to strike, just as we do with a factfinder's credibility determinations in other contexts. *See Smith*, 182 Ariz. at 115 ("What the juror actually conveyed in the moment of speaking is so dependent on demeanor and intonation as to be inaccessible to a reviewing court," and "[t]hus, this is a paradigm case for deference to the trial judge, who had the opportunity to see and hear her speak."); *see also State v. Gonzalez–Gutierrez,* 187 Ariz. 116, 118 (1996) (stating trial court determines credibility of witnesses at pre-trial suppression hearing); *State v. Williams*, 209 Ariz. 228, 231 ¶ 6 (App. 2004) (addressing claim of insufficient evidence and noting that "[a]lthough the record contains some conflicting evidence,

it was for the jury to weigh the evidence and determine the credibility of the witnesses"). Thus, the deferential abuse-of-discretion standard is appropriate for reviewing a decision on a motion to strike for cause. For all of these reasons, Colorado's arguments that the 2022 amendments modify, or require modification of, the standard of review for for-cause challenges are unpersuasive.

## II. The Trial Court Did Not Abuse its Discretion By Denying Colorado's Motion to Strike Juror #8 for Cause.

¶24    Applying the abuse-of-discretion standard to the trial court's denial of Colorado's motion to strike Juror #8 for cause, we find no error.

¶25    The trial court and the parties composed questionnaires for the potential jurors to complete before appearing in court. Complying with Rule 18.5(f) and its 2022 comment, the trial court also posed open-ended questions to Juror #8, and the trial court gave the parties a sufficient opportunity to question Juror #8 outside the presence of the other potential jurors. Thus, as a threshold question, the trial court complied with the procedural rules governing voir dire, as amended.

¶26    The extended individual voir dire of Juror #8 revealed objective information that mitigated potential biases suggested by her questionnaire. For example, although she initially disclosed a domestic violence incident that resulted in the death of her friend, Juror #8 revealed during further questioning that she and the victim were not "close friend[s]." Additionally, Juror #8 explained that her potential inability to serve fairly stemmed from her concern for the victim's surviving son. Given Juror #8's concern, the trial court confirmed that in Colorado's case, there was no surviving child to provoke the potentially biased response about which Juror #8 warned.

¶27    In a similar vein, Juror #8 gave context to her questionnaire disclosure of her past employment at the Sheriff's Office. Juror #8 explained she left that job before Colorado was arrested in this case, and thus had no personal interaction with him. She also confirmed that none of the hospital employees she worked with appeared on the witness list in this case.

¶28    After using case-specific questionnaires, allowing further questioning of Juror #8 by counsel, and posing open-ended questions to Juror #8 — all steps called for in the 2022 amendments — the trial court denied Colorado's motion to strike. In doing so, it found Juror #8 "was quite clear that . . . she can be fair and impartial" and nothing in her

"demeanor or attitude or anything" indicated any concerns that her assurances were untruthful. Colorado points to nothing in the record that counters the court's finding that Juror #8's assurances of impartiality were credible. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 209 ¶ 21 (2018) (stating rule that a "party asserting that the trial court erred in denying a motion to strike a juror for cause has the burden of establishing that the juror is incapable of rendering a fair and impartial verdict") (quoting *State v. Lavers*, 168 Ariz. 376, 390 (1991)).

**¶29** Significantly, defense counsel also expressly noted Juror #8 was "thoughtful" and "clearly has been thinking long and hard about this." This reasonable concession well captures the record we see on review — one in which a substantial colloquy unpacked the thoughts of a juror who shared potentially concerning information by questionnaire. The trial court conducted the very colloquy the 2022 amendments urged, which allowed the court to assess whether Juror #8 should have been dismissed for cause under Rule 18.4(b). Because in this case the trial court that met, questioned, and listened to Juror #8 had a logical and factual basis to find her able to render a fair and impartial verdict, we see no basis to conclude the trial court abused its discretion in denying Colorado's motion to strike Juror #8 for cause, and affirm.

## CONCLUSION

**¶30** The elimination of peremptory challenges in Arizona did nothing to alter the abuse-of-discretion standard of review that applies to a trial court's ruling on a motion to strike a potential juror for cause. The trial court here did not abuse its discretion in denying Colorado's motion to strike Juror #8. We affirm Colorado's conviction and sentence.

