IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

―――――――――――――

THE STATE OF ARIZONA,
*Appellee*,

*v.*

MAX G. MORENO,
*Appellant*.

No. 2 CA-CR 2024-0185
Filed February 20, 2026

―――――――――――――

Appeal from the Superior Court in Pima County
No. CR20232600001
The Honorable Renee T. Bennett, Judge

**AFFIRMED**

―――――――――――――

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals
By Jacob R. Lines, Assistant Attorney General, Tucson
*Counsel for Appellee*

Megan Page, Pima County Public Defender
By Ian M. McCloskey, Assistant Public Defender, Tucson
*Counsel for Appellant*

## OPINION

Presiding Judge Brearcliffe authored the opinion of the Court, in which Chief Judge Staring concurred and Judge Eckerstrom dissented.

B R E A R C L I F F E, Presiding Judge:

**¶1**        Max Moreno appeals his convictions and sentences for multiple crimes involving sexual misconduct with minors.  He argues the trial court denied him a fair trial by providing the jury with an erroneous "other-acts" instruction and allowing a biased juror to remain on the panel. We affirm.

### Factual and Procedural Background

**¶2**        Moreno was charged with six sexual offenses against his nieces Penny and Melanie, committed between 2015 and 2017.[1]  As to Penny, Moreno was charged with two counts of molestation of a child and one count of indecent exposure against a minor under fifteen.  *See* A.R.S. §§ 13-1410(A), 13-1402.  As to Melanie, Moreno was charged with two counts of molestation of a child and one count of sexual conduct with a minor under fifteen.  *See* A.R.S. §§ 13-1410(A), 13-1405(A).

**¶3**        The jury returned a mixed verdict, finding Moreno not guilty of one count of child molestation as to each victim but finding him guilty of the remaining four counts.  The trial court sentenced Moreno to concurrent and consecutive prison terms totaling forty-one years.  Moreno appealed. We have jurisdiction under article VI, § 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

### Discussion

### I.   Rule 404(c), Ariz. R. Evid., Jury Instruction

**¶4**        Before trial, Moreno filed a motion to sever the counts by victim.  He argued that trying all charges together would be unfairly prejudicial and deny him a fair trial.  The trial court determined there was

---

[1]We refer to the victims using pseudonyms.  Ariz. R. Crim. P. 31.10(f).

no risk of undue prejudice because the offenses against one victim would be admissible in a trial as to the other victim under Rule 404(c).[2]  The court denied the motion to sever.  The girls, ages twelve and fifteen, at the time of trial in 2024, each testified to the allegations.

¶5          After the second day of trial, Moreno objected to the trial court's proposed jury instruction regarding Rule 404(b) and Rule 404(c) evidence.  The court indicated a Rule 404(c) instruction was appropriate, primarily because it had denied Moreno's motion to sever based on the cross-admissibility of the evidence.  However, because the state had failed to properly notice its intent to introduce evidence of other, uncharged acts under either Rule 404(b) or (c), *see* Ariz. R. Crim. P. 15.1(b)(7), the court barred Melanie and Penny from testifying about any acts other than those charged.[3]

¶6          On the fourth day of trial, the parties settled jury instructions. Moreno restated his objection to the Rule 404(c) instruction, arguing that no "other acts" had been admitted and thus there was "no evidence" from which the jury could conclude that Moreno had "a character trait that predisposed him to commit these crimes."  Over Moreno's objection, the trial court instructed the jury that:

> Evidence of other acts has been presented.  You may consider this evidence in determining whether the Defendant had a character trait that predisposed him to commit the crimes charged. You may determine that the Defendant had a character trait that predisposed him to commit those crimes charged only if you decide that the

---

[2]The trial court conducted a full Rule 404(c) analysis and made "*specific* findings with respect to each of the prerequisites for admission under the rule."  *State v. Aguilar*, 209 Ariz. 40, ¶ 30 (2004); *see also* Ariz. R. Evid. 404(c)(1)(D).  Specifically, the court found that the "acts with regard to P[enny] and M[elanie] both involve engaging in sexual behavior with a girl who's around six years old and they absolutely would demonstrate a character [trait] that predisposed him to commit abnormal acts."

[3]To comply with this order, three times during the state's direct examination of Melanie, the prosecutor guided her away from discussing uncharged incidents and refocused her testimony on just this "one specific time."

> State has proven, by clear and convincing evidence, that the Defendant committed the other acts, and the other acts showed the Defendant's character predisposed him to commit abnormal sexual acts.
>
> You may not convict the Defendant simply because you find that he committed the other acts, or that he had a character trait that predisposed him to commit the crimes charged.

The court also instructed the jury that,

> It is your duty to determine what the facts are in this case by determining what actually happened. Determine the facts only from evidence produced in court.
>
> . . . .
>
> You must consider all these instructions, do not pick out one instruction, or part of one, and ignore the others.

¶7　　On appeal, Moreno first argues that the trial court erred by providing the jury with a Rule 404(c) instruction "when no other-act evidence was admitted" at trial. He contends the instruction "invited the jury to impermissibly speculate" that other illegal sexual acts had occurred and that it conflicted with the instruction that jurors were not to "guess about any fact." He argues this purported conflict between instructions was compounded because the phrase "other act" was not defined for the jury and additional instances of conduct were implied by one victim's testimony. Finally, Moreno claims that by giving the instruction, the court "impermissibly lessened the State's burden" to prove each element of the charged offenses beyond a reasonable doubt, and that the instruction constituted "impermissible [judicial] commentary on the facts."

¶8　　"We review a trial court's decision to give a jury instruction for an abuse of discretion." *State v. Aragon*, 252 Ariz. 525, ¶ 6 (2022). In considering whether an abuse of discretion occurred, we review de novo whether the trial court properly instructed the jury, *State v. Champagne*, 247 Ariz. 116, ¶ 22 (2019), and whether the jury instructions properly stated the law, *State v. Payne*, 233 Ariz. 484, ¶ 68 (2013). We consider instructions "as

a whole to determine whether the jury received the information necessary to arrive at a legally correct decision." *State v. Dann*, 220 Ariz. 351, ¶ 51 (2009). Because Moreno objected below, if we find that the court abused its discretion, we must consider whether the error was harmless. *State v. Davolt*, 207 Ariz. 191, ¶ 64 (2004). The state bears the burden of proving harmlessness beyond a reasonable doubt. *State v. Henderson*, 210 Ariz. 561, ¶ 18 (2005).

**¶9** "The purpose of jury instructions is to inform the jury of the applicable law," *State v. Abdi*, 226 Ariz. 361, ¶ 15 (App. 2011) (quoting *State v. Noriega*, 187 Ariz. 282, 284 (App. 1996)), and a "party is entitled to any jury instruction reasonably supported by the evidence," *State v. Burns*, 237 Ariz. 1, ¶ 48 (2015). However, providing an "abstract instruction, which 'broadens the issues beyond the scope of the evidence and thus impliedly submits to the jury issues and questions not properly before it,' constitutes error." *State v. Riley*, 248 Ariz. 154, ¶ 83 (2020) (quoting *State v. Willits*, 96 Ariz. 184, 190 (1964)).

**¶10** In general, evidence of other acts is not admissible to show a defendant's character or to prove action in conformity therewith. Ariz. R. Evid. 404(a); *State v. Aguilar*, 209 Ariz. 40, ¶¶ 9-10 (2004). But other-act evidence is admissible if offered for a proper purpose, such as to show a defendant's motive, plan, intent, or opportunity. Ariz. R. Evid. 404(b)(2); *State v. Vega*, 228 Ariz. 24, ¶ 9 (App. 2011).

**¶11** Under Rule 404(c), other-act evidence is permitted to show a defendant's aberrant sexual propensity to commit the charged acts. *State v. Salazar*, 181 Ariz. 87, 90 (App. 1994). For an uncharged act to be admissible as sexual propensity evidence, a trial court must first determine that: (1) clear and convincing evidence supports that the defendant committed the other act; (2) the other act provides a reasonable basis to infer that the defendant has an aberrant sexual propensity to commit the charged sexual offense; and (3) the evidentiary value of the other act is not substantially outweighed by the danger of unfair prejudice or any of the other factors mentioned in Rule 403, Ariz. R. Evid. *See Aguilar*, 209 Ariz. 40, ¶ 30. The state is also required to provide the defendant with notice if it intends to offer evidence under the sexual propensity exception, *see* Ariz. R. Evid. 404(c)(3); Ariz. R. Crim. P. 15.1(b)(7), and if evidence of other acts is admitted under Rule 404(c), the court must instruct the jury as to its proper use, Ariz. R. Evid. 404(c)(2); *see Aguilar*, 209 Ariz. 40, n.11.

**¶12** Moreno primarily relies on *State v. Ferrero*, 229 Ariz. 239 (2012), and *State v. Herrera*, 232 Ariz. 536 (2013), to argue that evidence of

one charge cannot be classified as an "other" act in relation to a separate charge within the same indictment. These cases address whether evidence of uncharged acts was properly admitted and discuss the differences between "other-act" evidence and "intrinsic" evidence. *See Ferrero*, 229 Ariz. 239, ¶¶ 2, 13; *Herrera*, 232 Ariz. 536, ¶¶ 5, 21. Intrinsic evidence is evidence of uncharged acts "so closely related to the charged act" that it may be admitted without using the Rule 404 exceptions. *Ferrero*, 229 Ariz. 239, ¶ 14; *see also Herrera*, 232 Ariz. 536, ¶ 21.

¶13        Moreno correctly notes that the evidence of the charges involving Penny are not intrinsic to the charges involving Melanie, and vice versa. That is to say, if the charges had been severed, the evidence of the charges involving Penny could only have been admitted in the trial for the charges involving Melanie under the Rule 404(c) exception. However, the charges here were not severed, and there was no need to admit any evidence under the exception. The evidence relevant to any given offense against the victim was intrinsic to that charge and therefore independently properly admitted at trial; it did not need to be intrinsic to any other charge or admitted "pursuant to" Rule 404(c) at all. Because the evidence was not admitted under Rule 404(c) in the first instance, the trial court was not required to give the sexual propensity instruction. *See* Ariz. R. Evid. 404(c)(2) ("In all cases in which evidence of another act is admitted pursuant to this subsection, the court shall instruct the jury as to the proper use of such evidence."). Although not required, the instruction correctly stated the law and informed the jury how it should consider the evidence presented: as relevant to show that Moreno had a character trait giving rise to an aberrant sexual propensity to commit an offense charged.

¶14        While Melanie may have inadvertently implied during her testimony that additional acts had occurred, the state immediately and consistently reminded her, and the jury, that she was only to discuss evidence related to the charged offenses. As a result, no evidence discussed any sexual act beyond the indictment. And even if a reasonable juror may have concluded that the reference to "other act" in the instruction could only mean an act outside of the indictment, jurors were instructed to "[d]etermine the facts only from evidence produced in court" and not to "guess about any fact." And, importantly, the court's Rule 404(c) instruction bound the jury to apply a clear-and-convincing-evidence standard to any such offering, and, given the absence of evidence of an other act outside of the indictment, no juror could reasonably have found that threshold met.

¶15        As to Moreno's claim about the state's burden of proof, the jury was explicitly instructed that "[e]vidence of other acts does not lessen the State's burden to prove the Defendant's guilt on each count beyond a reasonable doubt." The jury was also expressly, and correctly, instructed to consider each charge as "a separate and distinct offense" that must be decided "separately . . . uninfluenced by [their] decision on any other count." Notably, Moreno forcefully argued to the jury for the application of the state's burden of proof. We reject his contention that the instructions created confusion concerning the burden of proof applicable to each charge.

¶16        Additionally, the Rule 404(c) instruction here did not improperly express the court's "opinion as to what the evidence proves." *See Riley*, 248 Ariz. 154, ¶ 85 (quoting *State v. Rodriguez*, 192 Ariz. 58, ¶¶ 28-29 (1998)). It merely informed the jurors how they may consider the charged acts in relation to each other.

¶17        With regard to each of the instructions given, we presume the jury follows the trial court's instructions. *State v. Newell*, 212 Ariz. 389, ¶ 68 (2006). Taken together, and in context, these instructions did not conflict; rather, they properly guided the jury to a correct application of the law based on the facts of the case. The court did not abuse its discretion in providing the Rule 404(c) instruction. *See Aragon*, 252 Ariz. 525, ¶ 6.

## II.  Denial of Request to Strike Juror 11 for Cause

¶18        Moreno next argues the trial court erred by allowing Juror 11 to remain on the panel, despite Moreno's request to strike her for cause. Potential jurors were provided a pre-trial questionnaire that asked, as relevant here, "Have you, a family member, or a close friend ever been the victim of molestation, sexual abuse or child abuse?" Juror 11 had answered "Yes" and explained, "The incident happened 40 years ago. Told grownups. No one believed it happened. No report." During voir dire, Moreno asked Juror 11 if she could be fair and impartial in this case. She responded, "Yes, absolutely." Moreno questioned how she could be fair given her personal experiences, and Juror 11 responded, "I remember it like it was yesterday. . . but it doesn't affect me being able to judge him, un-judge him . . . . I've got no worries. I can be unbiased. It's not a problem." Finally, Moreno asked Juror 11 if her experience would cause her to favor the victims' testimony, to which she said, "No, not at all."

¶19        Moreno moved to strike Juror 11 for cause, stating that, while she appeared to be honest, he nonetheless had concerns about her ability to be fair and impartial. The trial court also expressed concern before asking

Juror 11 if she had an "extremely high level of confidence that [she would] not conflate [her] experiences with [the] testimony?" Juror 11 confirmed that she could "separate them, absolutely." The court denied Moreno's motion to strike Juror 11 for cause, and she was seated on the jury.

¶20 Moreno maintains Juror 11 was biased and the trial court failed to rehabilitate her with "meaningful[] interrogati[on]." He further argues that the court erred in rehabilitating the juror in front of the entire venire, rather than at a private bench conference, and that the Rule 404(c) jury instruction exacerbated the effect of Juror 11's purported bias. Finally, Moreno claims that in light of our supreme court's elimination of peremptory strikes, the seating of Juror 11 amounted to structural error.

¶21 Moreno has the burden of showing Juror 11 was "incapable of rendering a fair and impartial verdict." *State v. Jimenez*, 255 Ariz. 550, ¶ 3 (App. 2023) (quoting *State v. Acuna Valenzuela*, 245 Ariz. 197 ¶ 21 (2018)). "Because a trial judge has the best opportunity to assess whether a juror can be fair and impartial, appellate courts review [decisions on striking jurors] only for abuse of discretion." *State v. Hickman*, 205 Ariz. 192, ¶ 39 (2003); *see also State v. Colorado*, 256 Ariz. 97, ¶ 13 (App. 2023) (reaffirming abuse of discretion standard of review after elimination of peremptory strikes and confirming trial court's exclusive "duty and authority to assess and address juror bias"). And we will "defer to the trial judge's perceptions of the juror," looking only at "whether the judge's findings are supported by the record." *State v. Allen*, 253 Ariz. 306, ¶ 47 (2022); *see also State v. Montoya*, 258 Ariz. 128, ¶ 71 (2024) (elimination of peremptory strikes "did not remove trial courts from being in the best position to assess potential jurors' fairness and impartiality").

¶22 "The court, on motion or on its own, must excuse a prospective juror . . . if there is a reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). The trial court must "conduct a thorough oral examination of the prospective jurors," Ariz. R. Crim. P. 18.5(f), which includes, "[w]hen feasible, permit[ting] liberal and comprehensive examination by the parties," Ariz. R. Crim. P. 18.5(f) cmt. to 2022 amend. The court "should ask open-ended, non-leading questions to 'elicit [relevant] information from the subject juror.'" *State v. Puga*, 259 Ariz. 229, ¶ 21 (App. 2025) (alteration in *Puga*) (quoting *Colorado*, 256 Ariz. 97, ¶ 21).

¶23 But a trial court need not strike a juror for cause simply because he or she was "the victim of a crime similar to one with which the defendant is charged." *Puga*, 259 Ariz. 229, ¶ 27 (quoting *State v. Rose*, 121

Ariz. 131, 140 (1978)). "A juror's preconceived notions or opinions about a case do not necessarily render that juror incompetent to fairly and impartially sit in a case." *State v. Martinez*, 196 Ariz. 451, ¶ 28 (2000). A juror with preconceived notions or opinions about a case may be rehabilitated through follow-up questions from the court. *Id.* In conducting any rehabilitation of a prospective juror, courts "should not pursue rote, unequivocal assurances of impartiality." *Puga*, 259 Ariz. 229, ¶ 22; *see also* Ariz. R. Crim. P. 18.5(f) cmt. to 2022 amend.

**¶24** Juror 11 neither expressed "preconceived notions or opinions about the case," *see Puga*, 259 Ariz. 229, ¶ 24, nor did she ever waver in her assertions of being able to be impartial. The trial court's questioning, therefore, rather than being an attempt to rehabilitate Juror 11, simply clarified whether she was sure she could keep her personal experiences separate from her considerations at trial. *See id.*

**¶25** Moreover, even if it were rehabilitation, the trial court's questioning did not suggest a desired answer and therefore was appropriately open-ended under Rule 18.5(f). *See id.* ¶ 23. We disagree with Moreno's argument that the concern the court raised prior to the question outlined a desired answer. The court merely explained how bias could manifest itself under these circumstances before asking Juror 11 to clarify whether she would be able to prevent such an occurrence.

**¶26** Moreno correctly notes that if the trial court had not been persuaded by Juror 11's assurances of impartiality, it could have removed her for cause. A court may strike a juror for cause even where the juror makes promises of impartiality if the court remains unconvinced that the juror's bias will be set aside. *See Allen*, 253 Ariz. 306, ¶¶ 46-47. Ultimately, however, it is the court that determines a juror's credibility about assurances of impartiality, and we defer to those findings unless unsupported by the record. *Colorado*, 256 Ariz. 97, ¶¶ 16, 23. Because Juror 11 repeatedly denied bias, because the court deemed her credible, and because Moreno has not pointed to anything in the record "that counters the court's finding that Juror [11]'s assurances of impartiality were credible," *see id.* ¶ 28, the court did not err, structurally or otherwise, in denying Moreno's motion to strike.

**¶27** As to Moreno's argument regarding the alleged impropriety of questioning Juror 11 before the entire venire rather than privately at the bench, there is no error. During Moreno's direct voir dire of Juror 11, he asked if she wanted to continue the questioning at the bench, and she declined. Moreno did not thereafter object, nor did he make a request that

the trial court conduct a private bench examination. The trial court "retains the discretion to manage voir dire," Ariz. R. Crim. P. 18.5(f), and we review the court's conduct of voir dire for abuse of that discretion. *State v. Smith*, 215 Ariz. 221, ¶ 37 (2007). Moreno has not demonstrated how the court abused its discretion in declining to sua sponte order a private examination of Juror 11. *See State v. Bible*, 175 Ariz. 549, 572 (1993). Nor has he effectively explained how any such error affected the fairness of his trial or otherwise prejudiced him.

**¶28** Because we conclude the trial court neither erred in providing the Rule 404(c) jury instruction nor in seating Juror 11, Moreno's claim that the "erroneous use of the Rule 404(c) instruction created a uniquely inappropriate situation for th[at] juror" also fails. Outlined in detail above, we conclude the instruction was properly given, and we defer to the court's findings about Juror 11's ability to remain fair and impartial. *See Payne*, 233 Ariz. 484, ¶ 100. There is no error, structural or otherwise. *See State v. Bush*, 244 Ariz. 575, ¶ 47 (2018).

## Disposition

**¶29** For the foregoing reasons, we affirm Moreno's convictions and sentences.

E C K E R S T R O M, Judge, dissenting:

**¶30** In assessing whether Juror 11 should have been disqualified, we must start with the premise that she honestly believed she could act as a fair and impartial juror.[4] *See State v. Hoskins*, 199 Ariz. 127, ¶ 37 (2000) ("[T]he trial court has the best opportunity to observe prospective jurors and thereby judge the credibility of each."). But here, Juror 11's biography would raise a serious question, in the mind of a neutral observer, about her capacity to deliberate fairly and impartially. Under that circumstance, a juror's subjective confidence in their impartiality should be the starting point of our analysis, not its conclusion.[5] Rather, our state's statute

---

[4]I agree fully that the trial court's voir dire of Juror 11 neither constituted an effort at rehabilitation nor suggested a desired answer.

[5]Although a prospective juror's subjective belief in their impartiality must undoubtedly play an important role in assessing their suitability to serve, our authorities have repeatedly emphasized that it should not be a dispositive one. *See State v. Jimenez*, 255 Ariz. 550, ¶ 8 (App. 2023) ("[T]he court need not accept the subjective beliefs of challenged venirepersons

addressing mandatory disqualification, and our controlling jurisprudence applying that statute, compel a more comprehensive assessment of Juror 11's suitability to sit in this particular case. No matter how noble a prospective juror's intentions, those authorities require disqualification when a prospective juror's life experiences would present such obvious and acute challenges to their ability to assess the evidence impartially.

## Disqualification Under A.R.S. § 21-211

**¶31**         In § 21-211, A.R.S., our legislature has itemized those circumstances when venirepersons must be disqualified regardless of their subjective belief in their fitness to deliberate fairly. *See* § 21-211 ("The following persons *shall be disqualified* to serve as jurors . . . .") (emphasis added); *see also State v. Eddington II*, 228 Ariz. 361, ¶¶ 10, 14, 18 (2011) (prospective juror whose professional interest in case meet criteria under § 21-211(2), and thereby creates appearance of bias, must be disqualified "regardless of any juror-specific finding of actual bias"). Its subsections respectively require mandatory disqualification of those who would also serve as witnesses in the action; those who hold an interest, direct or indirect, in the outcome; and those who are related to one of the parties. *See* § 21-211(1)–(3). Each of these categories describe persons whose relationship to the matter litigated, based on uncontroversial presumptions about human motivations, would cause a neutral observer to question their capacity to deliberate impartially. *See State v. Eddington I*, 226 Ariz. 72, ¶ 11 (App. 2010) (describing subsections of § 21-211 as disqualifying those with "presumed allegiances").[6]

---

regarding their ability to remain unbiased."); *State v. Eddington I*, 226 Ariz. 72, ¶ 17 (App. 2010) (same and observing that objective factors alone may constitute grounds to excuse potential juror). This is for good reason. In cases involving traumatic crimes, even the most self-aware venireperson is ill-equipped to predict the details of what testimony and evidence will be presented and what effect that might have upon them. Of course, trials involving sex crimes often include wrenchingly emotional testimony by victims regarding grievous injuries.

      [6]Hereinafter, *State v. Eddington II* will refer to the opinion by that title issued by the Arizona Supreme Court. That case affirmed in full and did not vacate the opinion issued by the Arizona Court of Appeals of the same name. The latter case will be referred to as *State v. Eddington I.*

¶32 On the same list, energized by the same goals, our legislature has similarly required mandatory disqualification of "[p]ersons biased or prejudiced in favor of or against either of the parties." *See* § 21-211(4); *Eddington II*, 228 Ariz. 361, ¶ 8 (all four categories of mandatory disqualification under § 21-211 serve same goals). By including that subsection, our legislature has determined that there is a cohort of potential jurors whose life circumstances mandatorily disqualify them on the grounds of bias—even when they are not related to one of the parties, have no financial or professional interest in the case, and maintain they can deliberate fairly. *Id.* ¶ 9 (observing that § 21-211 must be construed "so that no part is rendered redundant or meaningless").

¶33 Our supreme court has clarified the analytical framework by which trial courts can distinguish more modest concerns over bias that can be resolved by simple voir dire from those triggering mandatory disqualification:

> By broadly disqualifying four categories of persons from sitting on a jury for a specific case, § 21-211 serves at least three goals: (1) preserving the right to a fair trial by impartial jurors, (2) ensuring that jurors derive their knowledge about the case solely from information presented at trial to the jurors collectively, and (3) protecting the appearance of fairness, which helps instill public confidence in the judicial system.

*Eddington II*, 228 Ariz. 361, ¶ 8. Applying these criteria to § 21-211(2), the court held that a peace officer employed by the same agency that investigated the case was an "interested person" who must be disqualified. *Id.* ¶ 18. And, it so held while expressly acknowledging the trial court's conclusion that the deputy had credibly avowed he could be fair and impartial. *Id.* ¶ 14.

¶34 The supreme court's reasoning—expressly applicable to all four subsections of § 21-211—is instructive here. The court concluded that the deputy's presence on the jury, given his employment with investigating agency, would erode both the public and the parties' confidence in the judicial system. *Id.* ¶ 14. It specifically observed that, if all such jurors shared that background, "the public likely—and the defendant undoubtedly—would reasonably perceive that a fair trial had not been had,

even if all the jurors had sworn during voir dire that they could be fair and impartial." *Id.*

¶35 The court also reasoned that peace officers, by virtue of their position, might have unique personal knowledge about how their own agencies conducted the type of investigation involved and the investigators who did so. *Eddington II*, 228 Ariz. 361, ¶ 13. It concluded that the deputy's presence on the jury would therefore undermine the purpose of § 21-211 "to ensure that jurors decide the facts and return a verdict based solely on evidence presented to them during the trial." *Id.*

¶36 Both of these concerns are equally evident here. In response to the questionnaire, Juror 11 answered that she had been the victim of "molestation, sexual abuse, or child abuse" and that she had told "grownups," but no one believed her. During voir dire, she explained that she had been victimized repetitively by her cousin when she was a child and that she "still . . . remember[s] it like it was yesterday." Without having been asked a specific question regarding it, she volunteered some explanations for why her parents had failed to believe her.

¶37 In short, Juror 11 avowed she was the victim of precisely the same species of the same traumatic crime for which Moreno was charged: repetitive abuse occurring in her home perpetrated by extended family. And, the disbelief of adults had both frustrated her and occupied a prominent place in her memories of that traumatic experience.

¶38 Under these circumstances, Juror 11's empanelment as an arbiter of Moreno's guilt would cause any reasonable observer to question the fairness of the proceeding. As explained above, universal understandings of human nature inform the requirement of mandatory disqualification under each of the specific provisions of § 21-211. Those understandings must also inform our reasoning here. Section 21-211 requires the trial court to assume that someone related to a party or someone employed by the agency that investigated a criminal case would harbor too much bias to fairly serve as a juror. In the same way, we should acknowledge that the victim of an especially traumatic crime, perpetrated against her as a child, would predictably identify with, and have natural allegiances to, other alleged child victims of the very same species of crime. We should likewise acknowledge that a person enduring that specific victimhood would likely harbor pronounced natural biases against a defendant who has been formally charged with victimizing other children

in the very same way.[7]  As our supreme court instructs in *Eddington II*, we must acknowledge the risks these biases pose to a fair trial because any reasonable observer would recognize those risks.  228 Ariz. 361, ¶ 14.

¶39        The specific features of this case also created unique challenges to Juror 11's impartiality in light of the specific features of her own trauma.  During voir dire, the state emphasized that it lacked any physical evidence of the crimes and therefore its case would depend "entirely on the testimony of the witnesses" and the jurors' "determinations about the credibility of those witnesses."  Later in voir dire, the state acknowledged that its case would depend on testimony that the jurors would find "difficult . . . to hear" from the child victims.  Conversely, the defense's case would depend on challenging the accuracy of that testimony.  For this reason, the trial court's failure to disqualify Juror 11 presented her with an extraordinary challenge:  to dispassionately assess whether the testimony of two other child victims should be believed, when her own alerts about her own victimization were not.

¶40        Moreno also raised a misidentification defense.  That defense required jurors to assess the reliability of the victims' memory of crimes occurring seven to nine years before the trial.  A neutral observer might worry that Juror 11 would have an experiential bias in assessing this defense; she had volunteered that, even after forty years, she recalled her own victimization "like it was yesterday."

¶41        Our supreme court has observed that a primary purpose of the mandatory disqualification provisions of § 21-211 "is to promote public confidence in the judicial system."  *Eddington II*, 228 Ariz. 361, ¶ 14 ("Everyone participating in and observing a trial should have confidence that the trial is fair in all respects.").  Accordingly, it has required disqualification when the public and the parties would reasonably question the capacity of a juror to deliberate fairly—notwithstanding the prospective juror's resolve to do so.  *Id.*  Given the obvious challenges to Juror 11's impartiality posed by the specific features of the case, that authority should have compelled the trial court to grant Moreno's motion to disqualify her.

---

[7]Although prospective jurors are instructed that the defendant is presumed innocent, they are also advised that the defendant has been charged with the specific crimes through an indictment backed by the credibility of the state.

¶42 Juror 11's empanelment also created a foreseeable risk that she would provide the jury unique personal knowledge regarding her own experience of being a child victim of repeated molestation and abuse. During deliberations, she might logically have shared these experiences in assessing the accuracy and credibility of the victims' testimony. To be sure, any lessons regarding a child victims' credibility, when drawn from Juror 11's own experience, might well have been correct ones. But they would not have been subject to cross-examination or evidentiary challenge by either party who might seek to explore the reliability of their application to the instant case. As our supreme court observed repeatedly in *Eddington II*, the four subsections of § 21-211 exist to prevent this very risk. 228 Ariz. 361, ¶¶ 8, 13 (explaining that one of the three goals of § 21-211 mandatory disqualification is to ensure that "jurors derive their knowledge about the case solely from information presented at trial . . . "; emphasizing importance of jury assessing "based solely on evidence" rather than on "information they glean from other sources").

¶43 The majority correctly observes that a trial court need not disqualify prospective jurors simply because they have been the victim of a crime similar to one with which the defendant is charged. But the authority for that proposition, our court's recent opinion in *State v. Puga*, 225 Ariz. 229 (App. 2025), and our supreme court's opinion in *State v. Rose*, 121 Ariz. 131 (1978), do not hold that a juror's previous victimization may *never* compel mandatory disqualification—only that it does not necessarily do so. *Rose*, 121 Ariz. at 139 ("Having been the victim of a crime similar to one with which the defendant is charged does not mandate a venireman's dismissal."); *Puga*, 225 Ariz. 229, ¶ 27 (quoting *Rose* without further analysis*)*. Importantly, here, neither case purported to address the question pursuant to our state's mandatory disqualification statute, § 21-211. *See Puga*, 225 Ariz. 229, ¶ 27 (addressing the question exclusively pursuant to Ariz. R. Crim. P. 18.4(b), 18.5(h)); *Rose*, 121 Ariz. at 139-140 (addressing the question pursuant to Ariz. R. Crim. P. 18.4(b)). And, tellingly, both cases focused on the credibility of the prospective jurors who nonetheless asserted their capacity to be fair and impartial—a non-dispositive factor under § 21-211. *See Eddington II*, 228 Ariz. 361, ¶ 14 (applying § 21-211 to reverse trial court's finding of prospective juror's impartiality while acknowledging the venireperson "thought he could decide fairly").

¶44 In *Rose*, our supreme court specifically held that a venireperson who had been a kidnapping victim need not be disqualified to serve in a case that included a kidnapping charge. 121 Ariz. at 139. In so holding, the court reasoned that the venireperson's particular kidnapping

experience had occurred long ago and was *dissimilar* to the kidnapping charged in the underlying case. Here, by contrast, Juror 11's victimization was nearly identical to that alleged by the victims in the case before us. And, although Juror 11's experience had also occurred long ago, she stated that she remembered it "like it was yesterday." Thus, the potential factors raising concern about potential bias in *Rose* were markedly more modest than those present here.

¶45 *Rose* does hold that a prospective juror's experience as a victim of a similar crime does not necessarily require disqualification—a sensible caveat given the number of non-traumatic property crimes that most potential jurors have experienced. 121 Ariz. at 139. But nothing in that holding invites a trial court to decline motions to strike involving *any* type of victimization as to *any* type of crime—no matter how traumatic the crime or how similar the circumstances to the case at bar. And, to the extent *Rose*, a case authored in 1978, suggests that such prospective jurors may never be disqualified once the court credits their assertions of impartiality, its holding has been plainly overtaken by more contemporary supreme court authority. *Compare Rose*, 121 Ariz. at 139 ("[a]ctual prejudice must first be shown" to mandate juror's dismissal), *with Eddington II*, 228 Ariz. 361, ¶ 10 (under § 21-221 analysis, "[t]he potential for an appearance of bias" suffices "to require disqualification regardless of any . . . finding of actual bias").

¶46 During oral argument before us, the state also maintained that disqualifying Juror 11 would offend her rights as a crime victim under the Arizona Constitution. *See* art. II, § 2.1 ("Victims' bill of rights"). A judge of our court has made a similar assertion in an analogous case. *See Puga*, 259 Ariz. 229, ¶ 95 (Jacobs, J., dissenting) ("The suggestion that crime victims may be automatically excluded as biased likewise offends Arizona's Victim's Bill of Rights.").

¶47 Although our courts should be vigilant to protect the rights of crime victims, these arguments miss the mark here. First and foremost, Moreno does not contend that all crime victims should automatically be excluded from all criminal trials. Nor does he contend that prospective jurors should be mandatorily disqualified simply because they were once victims of the very offense to be adjudicated. Rather, Moreno asserts only that victims of inherently traumatic crimes should be mandatorily

disqualified from cases alleging the identical victimization of others.[8]  Thus, the disqualification of Juror 11 would not have meaningfully infringed on her right to jury service.  Her admirable determination to be fair and impartial would make her an excellent juror on all civil or criminal cases not involving the sexual abuse of children.

¶48           As Judge Jacobs correctly observed in *Puga*, every eligible citizen has the right not to be excluded from jury service for invidious reasons.  259 Ariz. 229, ¶ 95; *see Powers v. Ohio*, 499 U.S. 400, 409 (1991).  But neither the state nor Judge Jacobs cites any case law suggesting that any person has a constitutional right to sit as a juror on every potential species of criminal case.  Nor could the mandatory disqualification of a potentially biased juror, for the exclusive purpose of protecting a defendant's right to a fair trial, be remotely characterized as an invidious reason for exclusion.  To the contrary, it is a purpose for disqualification our law expressly sanctions.  *See Eddington II*, 228 Ariz. 361, ¶ 6 (defendant's constitutional right to a jury trial "requires unbiased, impartial jurors"); Ariz. R. Crim. P. 18.4(b) (court "must excuse" prospective juror if reasonable ground exists to believe they "cannot render a fair and impartial verdict").  And, even assuming that the Victims' Bill of Rights would somehow apply to prospective jurors who are manifestly *not* victims as to the proceedings in question,[9] the defendant's right to due process prevails over victims' rights when the two directly conflict.  *See R.S. v. Thompson*, 251 Ariz. 111, ¶ 20 (2021).

¶49           Finally, the state and the majority emphasize that our trial courts have broad discretion to determine whether an individual juror can be fair and impartial—and that we must defer to the trial court in its conclusion that Juror 11 can be fair and impartial.  In cases that turn on the

---

[8]Recognizing the trauma inherent in sex crimes perpetrated against children, our legislature has enacted severe punishments for those convicted of the crimes charged here and that Juror 11 endured.  A.R.S. § 13-705(D), (P).

[9]That provision defines a victim as "a person against whom the criminal offense has been committed . . . ."  Ariz. Const., art. II, § 2.1(C).  Read in the context of its other provisions, the specified rights apply only to the criminal process surrounding the "crime against the victim."  *See* art. II, § 2.1(A)(1)-(12) (itemizing victims' rights applying logically only in specific case involving victim with subsection (6) and (7) expressly narrowing applicability only to "crime against the victim").

credibility, conduct, and demeanor of prospective jurors during voir dire, this court has repeatedly reaffirmed that deferential standard of review even in the post-peremptory strike era. *See State v. Colorado*, 256 Ariz. 97, ¶¶ 17-20 (App. 2023) (rejecting de novo review for assessing "juror's self-assurances of fairness" as trial court considers their "conduct and answers"); *State v. Jimenez*, 255 Ariz. 550, ¶ 5 (App. 2023) (same, noting superior ability of trial court to observe prospective jurors and assess their credibility). However, our supreme court has not accorded our trial courts similar deference when addressing whether a juror should be mandatorily disqualified pursuant to the criteria set forth in § 21-211. That assessment, anchored in the application of a statute, involves a mixed question of law and fact that our appellate courts consider de novo. *See Eddington II*, 228 Ariz. 361, ¶ 19 (reversing trial court's ruling juror could be fair and impartial on statutory grounds without addressing standard of review and affirming *Eddington I*); *Eddington I*, 226 Ariz. 72, ¶ 7 (expressly conducting de novo review as "mixed question[] of law and fact" in applying § 21-211 and explaining that court reviews "applicability of a statutory provision de novo" and is not bound by trial court's "conclusions of law").

¶50 These authorities instruct that we indeed owe deference to the trial court's assessment of a juror's impartiality to the extent those assessments arise from the juror's demeanor and credibility. Thus, we must accept the trial court's assessment that Juror 11 believed she could be fair and impartial. But, we consider de novo whether the undisputed facts conveyed by Juror 11 as to her victimization require disqualification under § 21-211(4). *See Eddington II*, 228 Ariz. 361, ¶ 13 (holding, based on undisputed facts of deputy's employment, that trial court erred in failing to strike him for cause while accepting trial court's assessment that deputy credibly avowed he could be fair and impartial).

### Failure to Conduct Private Voir Dire

¶51 Finally, my colleagues address the trial court's failure to conduct a private voir dire examination of Juror 11. The record demonstrates that Juror 11 answered questions about the features of her victimization in the presence of the venire panel—including all those who would eventually sit with her as jurors on the case. My colleagues correctly

deny any relief on grounds that Moreno failed to meaningfully brief the question.[10]

**¶52** However, given the topic of the voir dire examination of Juror 11, I cannot similarly agree that such a practice falls within the sound discretion of the trial court to allow. To the contrary, our supreme court has recognized that a mistrial should be granted on this ground if the facts elicited are "so excessive as to necessarily prejudice the other veniremen." *Rose*, 121 Ariz. at 140. Here, it was foreseeable that a voir dire examination, initiated to explore the details of a venireperson's sexual violation as a child, might create obvious risks that she would volunteer facts potentially affecting the remaining panel members' neutrality. Our trial courts should exert themselves to avoid such unnecessary risks.[11] I part ways with the majority opinion to the extent it suggests otherwise.

## Conclusion

**¶53** With the issuance of this opinion, this court has now twice, within one year, affirmed an extraordinary practice in our American justice system: the empanelment of victims of sex crimes to sit in judgment of those charged with such crimes. *See Puga*, 259 Ariz. 229, ¶¶ 34, 38. In combination, the two opinions would appear to place no limits on doing so. In *Puga*, this court affirmed the empanelment of not one, but two, such jurors, one of whom had expressed initial misgivings about her capacity to be fair and impartial. 259 Ariz. 229, ¶¶ 6-12. Here, the majority has sanctioned the same practice notwithstanding the remarkable similarity

---

[10]Although Moreno noted the public nature of Juror 11's voir dire in his opening brief, it is not clear that Moreno intended to raise any claim surrounding it.

[11]At minimum, the public voir dire of Juror 11 informed the jury panel that they would conduct their deliberations alongside a survivor of traumatic sexual abuse as a child—whose trauma was exacerbated by the failure of adults to credit her reports of the abuse. Such knowledge might plausibly have chilled the panel's willingness to openly debate the credibility of the child witnesses. And, even if Juror 11 had been excused, her public voir dire would have informed the remaining panelists that at least one child victim of sexual abuse "remember[ed] it like it was yesterday," even after forty years. To the extent Moreno asserted or implied reasonable doubts about the accuracy of the victims' memories based on the passage of time, Juror 11's voir dire observations presented a counterpoint not subject to cross-examination.

between the juror's traumatic victimization and the specific features of the case to be tried—and notwithstanding the juror's acknowledgement that her victimization was still very present in her thoughts.

¶54        The lesson is that our appellate courts will enforce no limits, based on objective cues of potential bias, on the eligibility of prospective jurors to serve—so long as they subjectively believe they can be fair and impartial. If Juror 11 may deliberate on a case involving child molestation and child sexual abuse, then surely the parent of a beloved child killed by a drunk driver may serve on a vehicular homicide case involving similar facts. By the same reasoning, a person misidentified and convicted of sexual assault, imprisoned before his exoneration by DNA, would presumably be eligible to serve on a sexual assault case even where the defense is misidentification. This simply cannot be the result if the text of § 21-211(4) and the goals energizing it are to be taken seriously.

¶55        In 2022, our supreme court amended the rules of criminal procedure to eliminate peremptory challenges to jurors. Ariz. Sup. Ct. Order R-21-0020 (Aug. 30, 2021) (effective Jan. 1, 2022). In doing so, it trusted that our courts would vigilantly apply the remaining procedural and substantive laws designed to foster a defendant's constitutional right to a fair and impartial jury. That procedural law includes renewed emphasis on case-specific questionnaires, more comprehensive voir dire, the use of open-ended questions when conducting voir dire examinations, and jurisprudential emphasis on the ready availability of other potential venirepersons when the decision to strike presents a close question. *See State v. Colorado*, 256 Ariz. 97, ¶¶ 18-19 (App. 2023); *State v. Jimenez*, 255 Ariz. 550, ¶ 8 (App. 2023) ("[O]ur courts may trust that other potential venirepersons are ready to serve . . . .").

¶56        But a trial court's duty does not end with a procedurally sound voir dire examination of a prospective juror. Our courts must also rigorously apply the substantive standards for a juror's eligibility set forth in our rules, statutes, and jurisprudence. And, our appellate courts must vigilantly enforce those standards. We must do so to ensure that the individual defendant has received a fair trial. We must do so to develop substantive case law that provides concrete guidance to assist our trial courts in future cases. And, we must do so to ensure that the absence of peremptory strikes does not degrade the fairness and impartiality of our juries.

¶57        In *Eddington II*, our supreme court has articulated an objective barometer for determining whether a prospective juror should be

mandatorily disqualified on the grounds of bias pursuant to § 21-211(4): would the empanelment of that juror present "the appearance of fairness" and "instill public confidence in the judicial system"?  228 Ariz. 361, ¶¶ 8, 14.  I respectfully submit that the routine empanelment of victims of acutely traumatic crimes—to sit in judgment of those who have allegedly committed such crimes—appears neither fair nor instills public confidence that Arizona's justice system is functioning well.  *Gray v. Mississippi*, 481 U.S. 648, 668 (1987) (fairness and impartiality of juries "goes to the very integrity of the legal system").

**¶58**        For the foregoing reasons, I would hold that the trial court erred in denying Moreno's motion to strike Juror 11 and grant relief on that basis.[12]  I concur in the majority opinion in all other respects.

---

[12]I do not address the question of whether the trial court's error was structural or subject to harmless error analysis.  Given the state's concession that its case turned on the jury's assessment of the credibility of its witnesses, the state would be unable to show harmlessness beyond a reasonable doubt.  *See State v. Henderson*, 210 Ariz. 561, ¶ 18 (2005).  Thus, Moreno would be entitled to a new trial under either prejudice standard.