IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee,*

*v.*

JOSE LUIS JIMENEZ,
*Appellant.*

No. 2 CA-CR 2022-0062
Filed July 13, 2023

---

Appeal from the Superior Court in Pima County
No. CR20173703001
The Honorable Teresa Godoy, Judge Pro Tempore
The Honorable James E. Marner, Judge

**AFFIRMED**

---

COUNSEL

Kristin K. Mayes, Arizona Attorney General
Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals, Phoenix
*Counsel for Appellee*

Megan Page, Pima County Public Defender
By Erin K. Sutherland, Assistant Public Defender, Tucson
*Counsel for Appellant*

## OPINION

Judge Eckerstrom authored the opinion of the Court, in which Presiding Judge Brearcliffe and Judge Kelly concurred.

E C K E R S T R O M, Judge:

¶1          Defendant Jose Jimenez appeals from his conviction and sentence for continuous sexual abuse of a minor.  Jimenez argues the trial court committed structural error by refusing to strike a "biased juror" for cause.  He also maintains the court committed reversible error when it precluded a defense expert from testifying as to Jimenez's sexual normalcy unless he also submitted to a psychosexual evaluation by a state expert, thereby forcing Jimenez to choose between presenting a complete defense or giving up his constitutional privilege against self-incrimination.  For the reasons that follow, we affirm.

### Factual and Procedural Background

¶2          We view the evidence in the light most favorable to affirming the conviction.  *See State v. Payne*, 233 Ariz. 484, n.1 (2013).  At trial, the state presented evidence that, repeatedly over the course of about eighteen months, Jimenez had sexually abused his niece, P.B., who was nine years old when the abuse began.  After P.B.'s parents learned of the abuse and reported it to police, Jimenez was charged with one count of continuous sexual abuse of a child.  After a six-day trial, the jury found Jimenez guilty.  The trial court sentenced him to thirteen years' imprisonment.  This timely appeal followed.    We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

### Juror Number 8

¶3          Jimenez first argues the trial court committed structural error by not striking for cause Juror 8, a retired Federal Bureau of Investigation (FBI) agent with experience surveilling suspected "pedophiles."  During voir dire, Juror 8 stated that for the final third of his FBI career, he had run a surveillance team "assigned to surveil" suspected pedophiles as they interacted with children.  Although Jimenez moved to strike Juror 8 for cause, the court denied the motion, finding credible the juror's indication that he "could be fair and impartial."  On appeal, Jimenez maintains that Juror 8's training and experience rendered him "clearly biased," as

evidenced by his responses to questioning during jury selection. As the party asserting error, Jimenez bears the burden of establishing Juror 8 was "incapable of rendering a fair and impartial verdict." *State v. Acuna Valenzuela*, 245 Ariz. 197, ¶ 21 (2018) (quoting *State v. Lavers*, 168 Ariz. 376, 390 (1991)).

**¶4** The due process right to a jury composed of unbiased, impartial jurors is protected by the United States and Arizona constitutions, as well as by Arizona statute and procedural rule. U.S. Const. amends. VI & XIV, § 1; Ariz. Const. art. II, § 24; A.R.S. § 21-211; Ariz. R. Crim. P. 18.4(b); *see also Morgan v. Illinois*, 504 U.S. 719, 726 (1992) (guarantee of trial by impartial jury guaranteed independently by Sixth Amendment and by Fourteenth Amendment's due process clause). A trial court must excuse prospective jurors for cause "if there is a reasonable ground to believe" they "cannot render a fair and impartial verdict," Ariz. R. Crim. P. 18.4(b), including if they are "biased or prejudiced in favor of or against either of the parties," § 21-211(4).

**¶5** "In assessing a potential juror's fairness and impartiality, the trial court has the best opportunity to observe prospective jurors and thereby judge the credibility of each." *State v. Hoskins*, 199 Ariz. 127, ¶ 37 (2000). Trial courts thus "retain broad discretion" to determine whether there are reasonable grounds to doubt that a venireperson will be able to serve as a fair and impartial juror. *State v. Eddington (Eddington I)*, 226 Ariz. 72, ¶ 17 (App. 2010). We will not set aside a trial court's ruling absent a showing that the court abused that discretion. *Hoskins*, 199 Ariz. 127, ¶ 37; *see also Acuna Valenzuela*, 245 Ariz. 197, ¶¶ 20-21.

**¶6** Effective January 1, 2022, our supreme court amended the Arizona Rules of Criminal Procedure to make Arizona the first jurisdiction in the nation to eliminate peremptory strikes in all criminal trials. Ariz. Sup. Ct. Order R-21-0020 (Aug. 30, 2021). Voir dire in the present case occurred nine days later. This substantial change eliminates the power of criminal defendants and prosecutors to strike venirepersons, including those whom they suspect might be biased. As our supreme court has acknowledged, the peremptory strike system played an important "auxiliary" role in assuring a fair and impartial jury in those cases when a trial court may have erred in failing to strike a venireperson for cause. *State v. Hickman*, 205 Ariz. 192, ¶¶ 1, 31, 40 (2003). Under the amendment, our trial courts exclusively determine the final composition of juries in criminal cases.

3

¶7        The fairness and impartiality of juries "goes to the very integrity of the legal system." *Gray v. Mississippi*, 481 U.S. 648, 668 (1987). Given these stakes, we address the approach our jurisprudence has counseled and the tools our trial judges possess to ensure an impartial jury. As noted by our supreme court, under certain circumstances, "[t]he potential for an appearance of bias suffice[s] to require disqualification regardless of any juror-specific finding of actual bias." *State v. Eddington (Eddington II)*, 228 Ariz. 361, ¶ 10 (2011), *aff'g* 226 Ariz. 72 (App. 2010). This is so, in part, because "protecting the appearance of fairness . . . helps instill public confidence in the judicial system." *Id.* ¶ 8.

¶8        In determining whether there is a reasonable ground to believe that a venireperson might be unable to render a fair and impartial verdict, our trial courts retain broad discretion to excuse or retain potential jurors who have been challenged for cause. *See Eddington I*, 226 Ariz. 72, ¶ 17. They may excuse potential jurors on their own motions. *See* Ariz. R. Crim. P. 18.4(b). And, they have the authority to conduct voir dire of a venireperson and allow the parties to follow up with voir dire of their own. After that process, the court need not accept the subjective beliefs of challenged venirepersons regarding their ability to remain unbiased. *See Eddington I*, 226 Ariz. 72, ¶ 17. Rather, our trial courts may determine that any objective factors suggesting bias alone provide reasonable grounds to excuse the potential juror. *Id.* And, when the decision to excuse or retain a potential juror presents a close question, our courts may trust that other potential venirepersons are ready to serve if that juror is excused. *See Hickman*, 205 Ariz. 192, ¶ 31 (acknowledging that such determinations involve "shades of gray" (quoting *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000))).

¶9        Here, the trial court was required to grapple with a non-trivial motion to strike a juror for cause. Juror 8 had been a career law enforcement officer. A substantial portion of that career involved investigating cases like the one before the court. That task included acquiring special expertise in assessing the truthfulness of a suspect's claims of innocence—a claimed aptitude especially relevant in the instant case, where Jimenez testified at trial. Based on these facts, the trial court could have reasonably questioned Juror 8's objective ability to be unbiased. And, on that basis, it possessed the broad discretion to excuse him from the panel. *See Eddington I*, 226 Ariz. 72, ¶ 17.

¶10       However, based on its first-hand interactions with, and observation of, the challenged juror during extensive voir dire, the trial court found the opposite and properly exercised its equally broad

discretion to retain Juror 8. The record supports the court's conclusion that Juror 8 could be fair and impartial. *See State v. Hill*, 174 Ariz. 313, 319, 321 (1993) (finding no abuse of discretion in trial court's refusal to strike police officer for cause).

¶11      In challenging that conclusion, Jimenez identifies two exchanges in particular.[1] First, after Juror 8 described his training and experience in lie detection and suspect interrogation, defense counsel asked him whether he could "evaluate the credibility of a witness without employing those techniques used in an interrogation room." Juror 8 replied, "I won't be saying anything, so yes." Jimenez contends this statement demonstrates Juror 8's inability to evaluate the evidence impartially, particularly because jurors in Arizona may participate in the questioning of the witnesses through the submission of anonymous questions.

¶12      Jimenez also argues Juror 8 demonstrated bias in his response to defense counsel's question of whether Juror 8 believed, at the time of jury selection, that Jimenez was a "pedophile." Juror 8 responded, "I have no idea." Jimenez contends this statement suggests Juror 8 did not presume Jimenez was innocent at the outset of the trial.

¶13      Nothing in the record before us, including the two exchanges Jimenez identifies, compelled the trial court to excuse Juror 8 for cause. "A juror's assurance of impartiality need not be couched in absolute terms." *State v. Trostle*, 191 Ariz. 4, 13 (1997); *see also Hoskins*, 199 Ariz. 127, ¶ 37. And here, Juror 8 repeatedly asserted that he could be fair and impartial.

---

[1]We decline the state's invitation to deem this issue waived because Jimenez did not move to strike Juror 8 for cause immediately following the first line of questioning about the juror's law enforcement experience. Jimenez requested that Juror 8 be stricken for cause because "he is going to try to . . . use his expertise. He has demonstrated that he relies on his training that none of the other jurors have the benefit of and that is on the record as out-of-date." Although this motion was made in the immediate aftermath of questioning on interrogation techniques, Jimenez's concern that Juror 8 would use "his expertise" covers the general argument asserted on appeal—that Juror 8 would be unable to overcome bias stemming from his law enforcement background. In any event, we may in our discretion reach an issue even if it "could be deemed waived" due to a party's failure to raise the issue during trial court proceedings. *State v. Boteo-Flores*, 230 Ariz. 551, ¶ 7 (App. 2012).

*See Acuna Valenzuela*, 245 Ariz. 197, ¶¶ 25-32 ("extensive questioning" sufficed to rehabilitate challenged jurors). He stated that he could remain impartial, that he understood the applicable burdens of proof, that he would not give any special deference or skepticism to law enforcement witnesses, and that every case "is individual and stands on its own." He noted that he had worked on "a number of cases" in which his investigation led him to conclude the suspect "wasn't guilty." And, he stated that he believed he could find Jimenez not guilty despite never, in his own career, having made an arrest of a suspect who was ultimately acquitted of charges. Each of these assurances of impartiality was unqualified. The court acted within its discretion in finding them credible. *See Eddington I*, 226 Ariz. 72, ¶ 17.

¶14      As to the challenged juror's professional training and experience, Jimenez correctly notes that Juror 8 indicated he was very good at identifying when people lie, having been trained in "detecting people's lies" and having personally conducted "over a thousand interviews." Juror 8 agreed, however, that his role as a juror was not the same as his former role as an interrogator. And, he unequivocally agreed he would be able to evaluate witness credibility without employing interrogation-room techniques. He further responded that when balancing his intuition against the evidence, "[i]t's always the evidence, always." Under these circumstances, the trial court acted within its discretion to accept as credible Juror 8's assurances that his training and experience would not impair his impartiality. *See Trostle*, 191 Ariz. at 13 (no presumption that potential jurors having served on jury that convicted in similar type of case or having had personal experiences with violent crime would be biased); *see also Eddington I*, 226 Ariz. 72, ¶ 6 ("peace officer is not automatically barred from serving as a juror").

¶15      We also find no clear prejudice underlying Juror 8's statement that he had "no idea" at that moment whether Jimenez was "a pedophile." So long as a prospective juror agrees to decide the case only on the evidence presented at trial, "[e]ven a juror with preconceived notions about the defendant's guilt need not be excused." *State v. Anderson*, 210 Ariz. 327, ¶ 28 (2005). Here, read in the context of the trial court's instructions, as well as Juror 8's repeated assertions that the evidence would guide his ultimate conclusion as to Jimenez's guilt, we disagree that this statement signaled that Juror 8 had either discarded the presumption of innocence or prejudged the case. Rather, the statement "was the answer of a juror who was willing to listen to the evidence before making up h[is] mind." *State v. Goodyear*, 98 Ariz. 304, 324-25 (1965) (after counsel inquired whether juror presumed defendant innocent as baseline, response that juror could not

"make up [her] mind right now" because she did "not know enough" did "not show that she was not fair and impartial"), *reh'g granted and abrogated on other grounds by State v. Goodyear*, 100 Ariz. 244 (1966). For all of these reasons, we affirm the trial court's conclusion that Juror 8 credibly showed he could render a fair, impartial verdict.

## Expert Testimony

¶16 Jimenez also argues the trial court infringed on his due process right to present a complete defense. In particular, he contends the court erred in conditioning his presentation of expert testimony as to his sexual normalcy on more extensive testing by a state's rebuttal expert. Before trial, Jimenez disclosed his intention to introduce character trait evidence of his sexual normalcy through expert testimony. His chosen expert, Dr. Samuels, conducted an evaluation of Jimenez over the course of approximately six hours and created a report, which was filed under seal with the trial court. The court denied the state's motion to preclude Dr. Samuels's testimony but granted its request for a continuance to allow it to seek its own expert to rebut that testimony.

¶17 Jimenez attended one six-hour evaluation session with the state's expert, Dr. Jones, but then refused to attend a second session, claiming he had not realized additional testing would be required. Specifically, he objected to the second session, observing that his own expert took only one session to complete the evaluation. The state then renewed its motion to preclude Dr. Samuels as an expert witness.

¶18 After hearing argument on the matter, the trial court directed Jimenez that if he chose to raise the defense of sexual normalcy by presenting Dr. Samuels's testimony, the state would be allowed to rebut that evidence with the testimony of its own expert witness, Dr. Jones, whose evaluation Jimenez would be required to complete. The court reasoned the state was not limited to merely reviewing the report of Jimenez's expert; rather, it was entitled to hire a separate expert to "evaluate everything and come to an independent conclusion."

¶19 At trial, Jimenez did not call his expert to testify regarding his sexual normalcy. He instead presented this theory through lay witness testimony, including that of his former romantic partner.

¶20 On appeal, Jimenez argues he "had a due process right to present the testimony from Dr. Samuels regarding his sexual normalcy" and the trial court erred by conditioning its admission on Jimenez "submitting to additional testing and evaluation by the State's expert." He

further argues this ruling forced him to choose between his right to present a complete defense and "his constitutional privilege against self-incrimination." We review a trial court's evidentiary ruling for an abuse of discretion. *See State v. Snelling*, 225 Ariz. 182, ¶ 18 (2010). We review constitutional questions de novo. *See State v. Armstrong*, 218 Ariz. 451, ¶ 20 (2008).

**¶21** Criminal defendants have a constitutional right to present a complete defense. U.S. Const. amend. XIV, § 1; *see also California v. Trombetta*, 467 U.S. 479, 485 (1984). They also enjoy a constitutional protection against self-incrimination. U.S. Const. amend. V. However, so long as evidentiary rules are not arbitrary or disproportionate to the purposes they are designed to serve and do not infringe upon an accused's "weighty" rights, state rule makers have "broad latitude" to establish criminal evidentiary rules. *Holmes v. South Carolina*, 547 U.S. 319, 324-25 (2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)). Jimenez does not challenge the constitutionality of our state's evidentiary rules. Rather, his argument relates to the trial court's application of those rules.

**¶22** Under Rule 404(a)(1), Ariz. R. Evid., if a criminal defendant presents pertinent character trait evidence to show action in conformity with that trait, the state is entitled to present evidence to rebut that claim. Arizona courts have applied this general principle in a variety of contexts during criminal proceedings. *See State v. LaBianca*, 254 Ariz. 206, ¶¶ 19-20 (App. 2022) (defendant who puts sexual normalcy at issue during Rule 404(c) hearing opens door for state rebuttal expert); *Phillips v. Araneta*, 208 Ariz. 280, ¶¶ 6, 8 (2004) (same, regarding mental-health-related mitigation evidence in penalty phase of trial); *State v. Rushing*, 243 Ariz. 212, ¶¶ 50, 53-55 (2017) (same, because "under *Phillips* and its progeny, a trial court can condition admission of a defendant's mental health-related mitigation evidence on his cooperation with the state's mental health evaluation"); *State v. Schackart*, 175 Ariz. 494, 499-501 (1993) (applying case law allowing rebuttal expert testimony in insanity defense cases to expert testimony in Rule 11, Ariz. R. Crim. P., proceedings, where *mens rea* at issue).

**¶23** Although the parties have identified no case law specifically addressing the factual scenario here, we see no reason our state's more general jurisprudence should not apply with equal force. As *Schackart* and *LaBianca* have reasoned, "the rule that a defendant who elects to testify at trial may not invoke the self-incrimination privilege to avoid cross-examination" applies to a number of contexts. *LaBianca*, 254 Ariz. 206, ¶¶ 8-12 (quoting *Schackart*, 175 Ariz. at 500). As in those cases, to "hold otherwise would deprive the state of the only adequate means to contest

the conclusions of a defense psychiatric expert." *Id.* (quoting *Schackart*, 175 Ariz. at 500). Simply put, if Jimenez "intends to offer the psychologist's testimony and report grounded upon a personal examination, he opens the door to an expert examination by the State." *Id.* ¶ 20.

**¶24** Jimenez argues that, because sexual normalcy was not an ultimate issue for the jury, his situation is distinguishable from those in which courts have held that denying the state a full rebuttal expert would unfairly prevent it from meaningfully rebutting testimony of a defense expert. *See, e.g., Schackart*, 175 Ariz. at 500-01; *Rushing*, 243 Ariz. 212, ¶¶ 50, 53-55. But, as Jimenez himself notes, "[t]he sole defense in this case was that [Jimenez] did not engage in the sexual conduct with PB that she alleged," making testimony on his sexual normalcy "both relevant and appropriate." *See State v. Rhodes*, 219 Ariz. 476, ¶ 12 (App. 2008) (lay witness testimony as to defendant's "sexual normalcy, or appropriateness in interacting with children, is a character trait, and one that pertains to charges of sexual conduct with a child"). Under these circumstances, preventing the state from rebutting that testimony "would deprive the state of the only adequate means to contest the conclusions of a defense psychiatric expert," *Schackart*, 175 Ariz. at 500, on a highly relevant defense theory in what is, ultimately, a case built on conflicting narratives. After all, our criminal rules "generally establish reciprocal discovery rights, which are 'intended to further the concept that a defendant is not entitled to an unfair advantage in the presentation of his defense.'" *LaBianca*, 254 Ariz. 206, ¶ 11 (quoting *Cabanas v. Pineda*, 246 Ariz. 12, ¶ 25 (App. 2018)). The state's "only adequate means" of contesting Jimenez's expert's testimony would have been "allowing the State's expert to examine" Jimenez, as well. *Id.* ¶ 12.

**¶25** We are unpersuaded by Jimenez's argument that he "had already submitted to testing" by the state and its "request for further testing was unreasonable under the circumstances." He argues in particular that standard evaluations for sexual normalcy run for approximately six hours and the state's expert's request for several hours of evaluation beyond that was unreasonable. But, as the trial court reasoned, an expert is entitled to conduct an examination that meets his or her professional standards. *See State ex rel. Adel v. Hannah*, 250 Ariz. 426, ¶ 21 (App. 2020) (in accordance with psychological ethical codes, state's "expert must be allowed to conduct the scope of examination, including testing, he believes ethically necessary to provide adequate support for his opinions"). The court did not abuse its discretion in so concluding.

**¶26** Finally, a trial court may preclude expert testimony if a defendant refuses to cooperate with a court-ordered mental health examination. *Phillips*, 208 Ariz. 280, ¶ 15. Here, over the state's objection, the trial court ruled the testimony of Jimenez's proffered expert admissible. The court imposed conditions on the admission of that testimony only after Jimenez refused to attend the second day of court-ordered testing. Under these circumstances, we find no abuse of discretion in the court's ruling as to Jimenez's expert's testimony. *See id.* ¶ 16 (refusal to submit to court-ordered mental health examination "closely analogous" to preclusion sanctions provided by Rule 15.7, Ariz. R. Crim. P.).

## Disposition

**¶27** For the foregoing reasons, we affirm Jimenez's conviction and sentence.