IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

WILLIAM MAURICE BROWN,
*Appellant*.

No. 2 CA-CR 2023-0247
Filed May 8, 2026

---

Appeal from the Superior Court in Cochise County
No. S0200CR202100007
The Honorable Jason A. Lindstrom, Judge

**AFFIRMED IN PART;
VACATED IN PART AND REMANDED**

---

COUNSEL

Kristin K. Mayes, Arizona Attorney General
By Alice M. Jones, Deputy Solicitor General/Section Chief of Criminal Appeals,
Phoenix
*Counsel for Appellee*

Charles Kendall, Cochise County Public Defender
By Mary E. Perez, Deputy Public Defender, Bisbee

and

Cochise County Office of the Legal Advocate
By Xochitl Orozco, Legal Advocate, Bisbee[1]
*Counsel for Appellant*

---

**OPINION**

---

Judge Sklar authored the opinion of the Court, in which Judge O'Neil concurred and from which Vice Chief Judge Eppich dissented.

---

 S K L A R, Judge:

**¶1** After being chased by law enforcement, William Brown crashed a truck in Bisbee, killing two passengers and injuring others. Brown was tried for first-degree murder, aggravated assault, and other charges. During jury selection, a prospective juror—an employee of the Sierra Vista Police Department—stated that she worked in the same room as the lead investigator, who worked for a different agency. She was also familiar with two other peace officers involved with the case. The trial court denied Brown's motion to strike that juror. Brown was then convicted of two counts of first-degree murder, two counts of second-degree murder, five counts of endangerment, five counts of aggravated assault, and one count of unlawful flight from a law enforcement vehicle.

**¶2** On appeal, Brown argues that the trial court erroneously denied his motion to strike the juror for cause. We disagree. We conclude that the juror was not categorically excluded from jury service under *State v. Eddington*, 228 Ariz. 361 (2011). We also conclude that the court acted within its discretion in concluding that A.R.S. § 21-211 did not otherwise require the juror's exclusion. In addition, we reject Brown's argument that the court caused his involuntary absence from trial and improperly admitted profile evidence.

**¶3** We agree with Brown, however, that the trial court violated his Fifth Amendment right against self-incrimination at sentencing and erroneously sentenced him for both first- and second-degree murder arising from the same deaths. We thus affirm his convictions on all but the

---

[1]Attorney Orozco withdrew as counsel after the filing of the opening brief, as she was no longer a member of the Cochise County Office of the Legal Advocate.

second-degree-murder counts. We also vacate his sentences and remand for resentencing consistent with this decision.

## BACKGROUND

¶4        We view the evidence in the light most favorable to sustaining Brown's convictions. *See State v. Gay*, 214 Ariz. 214, ¶ 2 (App. 2007). In January 2021, Brown picked up five people wearing camouflage in his truck at a gas station in Douglas. An off-duty Border Patrol agent saw the exchange, called the Border Patrol's dispatch center, and began following Brown. Two additional units attempted to stop Brown. Border Patrol officers called for assistance, and officers from the Bisbee Police Department also began to pursue Brown. During the pursuit, Brown reached a traffic circle, where he lost control and flipped the truck multiple times. Two passengers died, and several others were injured.

¶5        Brown was charged with two counts of first-degree murder, two counts of second-degree murder, five counts of endangerment, five counts of aggravated assault, and one count of unlawful flight from a law enforcement vehicle. After a jury trial, he was convicted of all charges. The trial court sentenced Brown to concurrent prison terms, the longest of which was natural life. This appeal followed.

## INTERESTEDNESS AND IMPARTIALITY OF JUROR 27

¶6        Brown argues that the trial court erred by failing to strike the juror, who he asserts was interested under A.R.S. § 21-211(2), as well as biased and prejudiced under A.R.S. § 21-211(4).

## I.        Factual and legal background

¶7        The investigation in the case was led by Homeland Security Investigations, a federal agency. Other agencies were also involved, including the Bisbee Police Department and the Sierra Vista Police Department. The juror at issue, Juror 27, was a community service officer at the SVPD. On the prescreening questionnaire, she indicated that she also worked with an HSI agent by "help[ing] out . . . as 'bait' for several takedowns" involving sex crimes against children and that she had been doing so "for about 6 months." Also on the questionnaire, Juror 27 stated that she had only worked with HSI for "about 3 months" and that she "merely watch[es] the interviews and help[s] with takedowns."

¶8         During jury selection, the parties questioned Juror 27 about her relationships with the testifying officers. Juror 27 described her role as a community service officer as "work[ing] with the officers and the detectives and basically play[ing] cop." She explained that she had worked with Agent Chadwick—an HSI agent and the lead investigator in Brown's case—"in the same room, but not on the same project." She also stated that she went to school with Agent Chadwick's daughter.

¶9         Juror 27 also said that she knew of Deputy Brennan, a Cochise County sheriff's deputy and former Bisbee police officer, who testified for the state, because the SVPD "work[s] in close relationship with the sheriff's office." She clarified, "I know of Deputy Brennan. I don't know Deputy Brennan." Last, Juror 27 knew Detective Ransford, an SVPD detective who was not listed as a witness but had some involvement in the case, because both were employed by SVPD. Despite these connections, she said that she could be fair and impartial.

¶10         Brown moved to strike Juror 27 for cause. The trial court denied this request, finding that Juror 27's answers to questions during voir dire showed she could be fair and impartial. Brown later renewed his motion to strike, which the court again denied.

¶11         A defendant is entitled to an impartial jury under the Sixth Amendment of the United States Constitution and article II, § 24 of the Arizona Constitution. A.R.S. § 21-211 sets forth four categories of people who are disqualified to serve as jurors. Relevant here, the categories include those who are "interested directly or indirectly" in the matter and who are "biased or prejudiced in favor of or against" either party. § 21-211(2), (4). The statute serves "at least three goals: (1) preserving the right to a fair trial by impartial jurors, (2) ensuring that jurors derive their knowledge about the case solely from information presented at trial to the jurors collectively, and (3) protecting the appearance of fairness, which helps instill public confidence in the judicial system." *Eddington*, 228 Ariz. 361, ¶ 8.

## II.    The record supports the trial court's conclusion that Juror 27 was not interested

¶12         On appeal, Brown first argues that the trial court erred in refusing to strike Juror 27 because she was interested in the matter. In response, the state argues that Juror 27 was not interested because she was neither a law-enforcement officer nor employed by HSI.

### A. Juror 27 was not interested under the categorical rule imposed by *State v. Eddington*

**¶13**        In general, the determination of whether a particular juror is "interested" is a fact-specific issue. *See State v. Guevara-Enriquez*, ___ Ariz. ___, ¶ 9, 576 P.3d 122, 126 (App. 2025) (evaluating specific factual record concerning juror). But in *Eddington*, our supreme court established a categorical rule that one class of prospective jurors is necessarily "interested"—peace officers employed by the law enforcement agency that investigated a criminal case. 228 Ariz. 361, ¶ 18. This court has declined to extend *Eddington*'s rule to other categories of people. *See, e.g.*, *State v. Romero*, 258 Ariz. 237, ¶ 14 (App. 2024) (prospective employee of investigating agency); *Guevara-Enriquez*, ___ Ariz. ___, ¶ 10, 576 P.3d at 126 (spouse of peace officer of investigating agency).

**¶14**        As in those cases, *Eddington*'s categorical rule does not apply to Juror 27. She was not employed by HSI, nor was she a peace officer. *Eddington*, 228 Ariz. 361, ¶ 18; *see also State v. Hill*, 174 Ariz. 313, 319-21 (1993) (juror need not be stricken for cause when working for different law enforcement agency than testifying officers). A community service officer is not a "[p]eace officer" as defined in Section 13-105(29), which provides that a peace officer is "any person vested by law with a duty to maintain public order and make arrests." *See also* A.R.S. § 1-215(28). Nothing in Juror 27's statements suggested that she had such authority. And while Brown describes *Eddington* as "clearly preclud[ing] persons working for the same law enforcement agency," its holding is limited to peace officers of the investigating agency.

**¶15**        Our dissenting colleague suggests that we should extend *Eddington*'s categorical rule to these facts. He describes Juror 27's employment with SVPD rather than HSI, as well as her status as a non-peace officer, as "distinctions without a difference." We agree that the nature of these distinctions is relevant to whether Juror 27 was "interested" under Section 21-211(2). But they do not bring Juror 27 within *Eddington*'s categorical rule. *Eddington*, 228 Ariz. 361, ¶ 1. They are instead relevant to the individualized determination of whether the statute applies to her. And we are unpersuaded that *Eddington*'s rule should be extended further. Given the potential nuances in roles such as community service officers, as well as the differences in types of inter-agency cooperation, other types of relationships are better addressed on an individualized basis.

### B. The record supports the trial court's determination that Juror 27 was not "interested"

**¶16**        It follows that we must still review the trial court's individualized determination that Juror 27 was not interested. We review for an abuse of discretion. *See State v. Jimenez*, 255 Ariz. 550, ¶ 5 (App. 2023). A court has broad discretion to grant or deny a motion to strike a juror for cause. *Id.* Because it is in the "best position to perceive and assess jurors," we give deference to the trial court's findings. *State v. Colorado*, 256 Ariz. 97, ¶ 16 (App. 2023).

**¶17**        While Section 21-211(2) does not define the term "interest," our case law, including *Eddington* itself, provides guidance. 228 Ariz. 361, ¶ 10. Potential jurors who have a disqualifying interest in a case include those with a pecuniary interest, "a desire to see one side prevail," or an alignment with or loyalty to one party or side. *Id.* ¶¶ 10-11. Employees of the investigating agency can have a disqualifying interest because of the pressures they face in judging the credibility and conduct of coworkers and their access to information not available to other jurors. *Id.* ¶¶ 12-13. And because a "primary purpose of [the statute] is to promote public confidence in the judicial system," we also analyze whether the prospective juror's presence would lead the public to "reasonably perceive that a fair trial had not been had." *Id.* ¶ 4.

**¶18**        Applying these standards, Brown has not provided a record containing sufficient detail for us to conclude that the trial court abused its discretion in concluding that Juror 27 was not interested. *See State v. Diaz*, 223 Ariz. 358, ¶¶ 12-13 (2010) (appellant must affirmatively establish error in the record). Regarding her alignment with or loyalty to HSI, the record does not detail how much work she performed with the agency, how significant of a role it played in her employment at SVPD, or whether the work was likely to continue. At best, she stated on the prescreening questionnaire that she had participated in "takedowns" with HSI, which related to other types of crimes. Nothing in the record indicates that, through this work, she had access to information about this case. *See id.* ¶ 13; *see also Guevara-Enriquez*, ___ Ariz. ___, ¶ 9, 576 P.3d at 126 (cannot conclude whether law-enforcement agency employee would be disqualified without adequate record describing "level of access" to details of investigation).

**¶19**        Likewise, the record does not provide enough information for us to conclude that Juror 27 had a personal loyalty to Deputy Brennan. At the time of the incident, Deputy Brennan worked for the Bisbee Police

Department, an agency involved in the pursuit of Brown's vehicle. Only later did he go to work as a Cochise County sheriff's deputy, which is how Juror 27 knew of him. And again, Juror 27 merely "kn[e]w of" Deputy Brennan. She did not know him, which counsels against a finding of personal loyalty.

**¶20** Indeed, Juror 27 repeatedly affirmed that she did not have a sense of loyalty to the prosecution and would not feel accountable to the testifying officers if she were to reach a not-guilty verdict. The trial court was entitled to credit those statements, which are relevant to determining whether Juror 27 was interested. *Eddington*, 228 Ariz. 361, ¶¶ 10-11.

**¶21** Consistent with this understanding, our supreme court in *Hill* recognized that law-enforcement officers are not necessarily disqualified from jury service, even if they know people involved in the case's investigation and prosecution. 174 Ariz. at 320-21 (trial court did not abuse discretion in refusing to strike prospective juror who knew prosecutor, investigator, and coroner from job as police officer, but assured trial court he could be fair and impartial). *Eddington* does not call *Hill* into question. *Eddington*, 228 Ariz. 361, ¶ 16. As for the pressures of judging the credibility of her coworkers, SVPD Detective Ransford did not testify. *See id.* ¶ 12.

**¶22** During voir dire, one juror expressed concern about Juror 27's presence on the jury, which arguably suggests that at least one person believed her presence would undermine confidence in the judicial system. *See id.* ¶ 14. But in addressing this issue, the trial court concluded that the presence of an aspiring law-enforcement officer on the jury had "no meaning other than she's pursuing a career in a noble profession" because "there's no evidence that has been presented by anyone to suggest that [she] is incapable or unable or in any way biased."

**¶23** The trial court was better positioned than we are to evaluate Juror 27's comments and evaluate the risk to public confidence. *See Colorado*, 256 Ariz. 97, ¶ 16. Unlike the trial court, we have had no opportunity to review Juror 27's demeanor, which was relevant to Brown's motion to strike her and the court's decision to deny that motion. Given our deferential standard of review, we do not believe the court abused its discretion in concluding as it did.

**¶24** Our dissenting colleague views the record differently. He points to Juror 27's relationship with HSI and her "integral" role in criminal prosecutions. He also relies on the other juror's comment about Juror 27's presence on the jury. These are serious points. Our colleague's concerns

would have provided the trial court with a sufficient basis for striking Juror 27 for cause. That may have been the better approach, especially because the elimination of peremptory strikes left Brown without another basis for removing Juror 27. *See* Ariz. Sup. Ct. Order R-21-0020 (Aug. 30, 2021). Our task, though, is not to second-guess the trial court, only to evaluate whether it abused its discretion. And, as we have explained, given the lack of development in the record, the court acted within its discretion in denying Brown's motion to strike Juror 27 for cause.

## III. The record supports the trial court's conclusion that Juror 27 was not biased or prejudiced

**¶25** Brown additionally argues that Juror 27 should have been stricken because she was biased and prejudiced, so she could not render an impartial verdict. We review a court's ruling regarding whether a venireperson will be able to serve as a fair and impartial juror for an abuse of discretion. *Jimenez*, 255 Ariz. 550, ¶ 5.

**¶26** Under Section 21-211(4), those who are "biased or prejudiced in favor of or against either of the parties" are disqualified from jury service. And under Rule 18.4(b) of the Arizona Rules of Criminal Procedure, a trial court must excuse prospective jurors if "there is a reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict." A trial court must evaluate a juror's personal assurances of impartiality in the context of her demeanor and conduct. *See Colorado*, 256 Ariz. 97, ¶ 22.

**¶27** Juror 27 repeatedly affirmed that she could be fair and impartial. The trial court found her to be credible, and we defer to this finding because "the trial court is 'in the best position to assess the demeanor of the venire, and of the individuals who compose it.'" *See State v. Acuna Valenzuela*, 245 Ariz. 197, ¶ 24 (2018) (quoting *State v. Naranjo*, 234 Ariz. 233, ¶ 12 (2014)). Given the broad discretion afforded to trial courts when granting or denying a motion to strike a juror, the court did not abuse its discretion in refusing to strike Juror 27. *See Jimenez*, 255 Ariz. 550, ¶ 5.

## ABSENCE AT TRIAL

**¶28** Brown next asserts the trial court erred by denying a motion for mistrial that he made on the fourth trial day. He had argued that his absence on the prior day was involuntary. We review the denial of a motion for mistrial for an abuse of discretion. *State v. Williams*, 209 Ariz. 228, ¶ 47 (App. 2004).

¶29 On the third day of trial, Brown refused to be transported to court because jail staff had required him to wear a leg restraint that he believed would be visible to the jury. The trial court determined that Brown was not prejudiced by being forced to wear the restraint because the judge himself had not noticed it on the first day "and if someone [had] noticed it, that means that person is really attentive to detail and that person is going to notice whatever we do." The next day, Brown filed a motion for mistrial, asserting his constitutional rights had been violated when he was "not permitted to attend trial free from visible restraints." The court denied the motion, finding that the restraint was not visible and that Brown could not "set the terms" regarding when he would come to trial.

¶30 On appeal, Brown argues that the trial court erred by denying his motion for mistrial because he had been faced with the untenable decision of choosing between attending his trial with a visible leg restraint or being absent, effectively making his absence involuntary. In response, the state argues that his absence was voluntary because the court found multiple times on day four that the leg brace was not visible.

¶31 A defendant has a right to be present at his trial under the Fifth and Sixth Amendments of the United States Constitution. *State v. Garcia-Contreras*, 191 Ariz. 144, ¶ 8 (1998); *see also* Ariz. Const. art. II, § 24 ("[T]he accused shall have the right to appear and defend in person."). However, "[a] defendant may voluntarily relinquish the right to attend trial." *Garcia-Contreras*, 191 Ariz. 144, ¶ 9. Should a defendant be present at trial, "[t]he law has long forbidden routine use of visible shackles during the guilt phase." *Deck v. Missouri*, 544 U.S. 622, 626 (2005). This right, derived from the constitutional right to due process, cannot be violated absent findings of particular concerns, such as an escape risk or security need, related to the defendant on trial. *Id.* at 633; *State v. Gomez*, 211 Ariz. 494, ¶ 49 (2005).

¶32 Because the trial court did not make any findings of specific security concerns, Brown had a right to attend his trial free of visible restraints on the third day. *See Deck*, 544 U.S. at 633. However, under the circumstances, we do not consider Brown's absence to be involuntary given that he refused transport and thus prevented the trial court from making any findings about whether the restraints were visible or if some other solution was available. Whether the restraints were visible on the first day is irrelevant to whether Brown's refusal to attend trial on the third day was voluntary.

¶33        Although the parties' briefing does not frame the issue in this context, we will affirm the trial court's ruling if legally correct for any reason supported by the record. *State v. Moreno*, 236 Ariz. 347, ¶ 5 (App. 2014). We do so here. The trial court did not abuse its discretion by finding Brown's absence from the third day of trial to be voluntary and subsequently denying Brown's motion for a mistrial. *See State v. Reed*, 196 Ariz. 37, ¶¶ 3, 7 (App. 1999); *Williams*, 209 Ariz. 228, ¶ 47.

**PROFILE EVIDENCE**

¶34        Brown argues that the trial court erred by allowing the state to present impermissible profile evidence that went to the ultimate issue of the case. "We review a trial court's admission of evidence for an abuse of discretion, which can include errors of law." *State v. Haskie*, 242 Ariz. 582, ¶ 11 (2017).

¶35        Before trial, the state moved to introduce modus-operandi evidence about human-smuggling organizations to "help the jury understand the Defendant's motive for fleeing from law enforcement." Brown objected, arguing that it constituted impermissible profile evidence. After a hearing, the trial court granted the state's motion, finding testimony of the "general multi-tiered structure" of human-smuggling organizations to be permissible. The court additionally noted that, because Brown was not being charged with human smuggling, the evidence would not go toward an ultimate issue.

¶36        On the sixth day of trial, the state questioned Agent Chadwick about the general practices of human-smuggling organizations. The state then pivoted its questioning and asked Agent Chadwick about Brown and his connection to human smuggling. The trial court excused the jury and clarified to counsel that modus-operandi evidence was permissible as long as the witness did not attempt to brand any particular person "as to what they are." Specifically, the court explained that "if you start saying this person is the recruiter, this person is the coordinator, this person is the driver . . . you're crossing a line."

¶37        The jury returned, and the state continued to question Agent Chadwick. During that questioning, Agent Chadwick identified a person involved in Brown's case—but not Brown himself—as a "coordinator." The trial court struck the testimony, instructed the jury to disregard it, and recessed for the day. The next day, Agent Chadwick resumed his testimony but again identified another person as a "coordinator." Brown did not object.

¶38        On appeal, Brown argues that Agent Chadwick's identification of particular people as members of a human-smuggling organization is more akin to impermissible profile evidence offered as proof of his guilt than as modus-operandi evidence. In response, the state argues that most of Agent Chadwick's testimony was about how human-trafficking organizations are structured and that, when he "stepped outside this parameter" by identifying two individuals as coordinators, any improper testimony was "so fleeting that it was apparently not noticed by the court or the parties." Moreover, the state argues that even if this was error, it was not fundamental because it did not go toward the elements of any of his offenses.

¶39        Expert testimony concerning modus operandi is admissible if it is limited to general practices of criminal organizations and does not comment on the defendant's guilt. *State v. Gonzalez*, 229 Ariz. 550, ¶ 16 (App. 2012). This rule avoids impermissible profile evidence, which is evidence offered "to implicitly or explicitly suggest that *because* the defendant has those characteristics, a jury should conclude that the defendant must have committed the crime charged." *Haskie*, 242 Ariz. 582, ¶ 14. Profile evidence cannot be introduced to prove guilt "because of the risk that a defendant will be convicted not for what he did but for what others are doing." *Id.* ¶ 15 (quoting *State v. Ketchner*, 236 Ariz. 262, ¶ 15 (2014)).

¶40        To the extent Agent Chadwick's testimony was stricken, Brown does not argue that any additional remedy was necessary. We therefore do not address that testimony further. As for the non-stricken testimony, because Brown did not object, we review for fundamental error only. *State v. Perez-Gutierrez*, 257 Ariz. 334, ¶ 18 (2024). A defendant demonstrates fundamental error where "(1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, *or* (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, ¶ 21 (2018). If the defendant makes a showing of fundamental error under the first two prongs, he must also show he has been prejudiced by the error. *Id.*

¶41        Brown makes no argument on appeal as to what our standard of review is or how any asserted error was fundamental. However, "we may nonetheless reverse for fundamental error not presented by way of appeal that is 'clearly apparent' from our review of the record." *State v. Barraza*, 209 Ariz. 441, ¶ 21 (App. 2005) (quoting *State v. Stroud*, 207 Ariz. 476, ¶ 5 (App. 2004)). Even if it is not "the argument the defendant makes

on appeal, we will not ignore fundamental error when we find it." *State v. Hickman*, 149 Ariz. 248, ¶ 4 (App. 1999).

¶42 The only plausible basis for fundamental error in Agent Chadwick's two descriptions of others as "coordinators" is that it "went to the foundation of the case." *See Escalante*, 245 Ariz. 135, ¶ 18. An error goes to the foundation of a case "if it relieves the prosecution of its burden to prove a crime's elements, directly impacts a key factual dispute, or deprives the defendant of constitutionally guaranteed procedures." *Id.*

¶43 Whether Brown was engaged in human smuggling was relevant. Although not an element of the offenses, the intent to assist a human-smuggling organization forms the basis for a sentencing enhancement. *See* A.R.S. § 13-715. And here, the jury found the facts underlying that enhancement. Brown's sentence was also aggravated because he violated 8 U.S.C. § 1323, the federal statute governing the unlawful bringing of "aliens" into the United States.

¶44 Even so, and even assuming that Agent Chadwick's references to two other people as "coordinators" was improper profile evidence, the admission of that evidence was not fundamental error. The references were brief in the context of a ten-day trial. *Compare Escalante*, 245 Ariz. 135, ¶ 27 (admission of evidence went to foundation of case when evidence "permeated the trial"), *with State v. Hulsey*, 243 Ariz. 367, ¶ 114 (2018) (finding "brevity and inconsequential nature" of erroneous reference to defendant did not constitute fundamental error). And Agent Chadwick's testimony did not directly impact a key factual dispute, as Brown did not meaningfully challenge that he was involved in human smuggling. Most importantly, at the aggravation phase, where his connection to human smuggling was most relevant, he did not address the issue at all.

¶45 At the guilt phase, Brown's defense was that the state did not prove beyond a reasonable doubt that he had been driving the vehicle—as opposed to sitting in the passenger seat—at the time of the accident. Brown has not explained, nor can we discern, how testimony that other people were "coordinators" bears upon this issue. *See State v. Ibeabuchi*, 248 Ariz. 412, ¶ 25 (App. 2020) (trial court did not err imposing counsel for defendant's probation-violation hearing where it had "no relation to or effect on proving the elements of his probation violation"). As such, Agent Chadwick's challenged testimony did not go to the foundation of the case. We conclude that the trial court did not fundamentally err in admitting it.

**REFUSAL TO ACCEPT RESPONSIBILITY AT SENTENCING**

¶46        Brown argues that the trial court violated his constitutional right to remain silent by considering his refusal to admit guilt as an aggravator at sentencing. We will not modify a sentence that is within the statutory limit absent a clear abuse of discretion. *State v. Long*, 207 Ariz. 140, ¶ 37 (App. 2004). However, constitutional issues, such as a violation of the Fifth Amendment, are reviewed de novo. *State v. Harrod*, 218 Ariz. 268, ¶ 38 (2008).

¶47        The jury found several aggravating factors proven at trial. At the sentencing hearing, the trial court repeatedly told Brown that it wanted him to accept responsibility or show remorse. Right before pronouncing the sentence, the court told Brown that it came into the hearing "honestly undecided" and that "[a]ll [it] wanted to see and hear from [Brown] was some acceptance of responsibility and some show of remorse" but "instead all [Brown] did was point [his] fingers at everybody else."

¶48        The trial court ultimately sentenced Brown to maximum sentences for first-degree murder and aggravated assault, as well as to aggravated sentences for unlawful flight from a law enforcement vehicle and endangerment, all to run concurrently. Brown asked the court if its decision was based on his lack of remorse. The court responded that there was no "one particular thing," but it also stated: "I just wanted [Brown] to take responsibility. I wanted to see that [Brown] took responsibility." Brown reminded the court that he was maintaining his innocence, to which the court responded that it "didn't appreciate" that Brown was not "taking any responsibility for [his] decisions to be where [he is] right now."

¶49        Under the Fifth Amendment, a trial court cannot sentence a defendant to an aggravated term "based on his 'lack of contrition,' which 'is, for legal purposes, tantamount to a refusal to admit guilt.'" *State v. Hernandez*, 231 Ariz. 353, ¶ 4 (App. 2013) (quoting *State v. Hardwick*, 183 Ariz. 649, 656 (App. 1995)); *see also Mitchell v. United States*, 526 U.S. 314, 327-28 (1999) (court cannot draw adverse inference from defendant's silence at sentencing). Thus, a court deprives a defendant of an essential right when it considers his lack of remorse or failure to admit guilt as an aggravator in its sentencing decision. *State v. Trujillo*, 227 Ariz. 314, ¶ 15 (App. 2011). We will uphold an aggravated sentence even when the court considered improper factors so long as "the record clearly shows the trial court would have reached the same result even without consideration of the improper factors." *Hardwick*, 183 Ariz. at 657-58. Because Brown objected to the court's consideration of his refusal to admit guilt during

13

sentencing, we review for harmless error. *See State v. Henderson*, 210 Ariz. 561, ¶ 18 (2005).

**¶50**       Here, the trial court was within its discretion to order an aggravated or maximum sentence. *See* A.R.S. §§ 13-752(A), (Q), 13-1201, 13-1204(A)(1), (F), 28-622.01, 13-703(J). However, the record shows that the court repeatedly and extensively relied on Brown's lack of remorse when making its decision. *See Trujillo*, 227 Ariz. 314, ¶ 15; *see also State v. Mendoza*, 248 Ariz. 6, ¶ 34 (App. 2019) (court's broad discretion cannot override defendant's constitutional right not to be punished for exercising his or her rights). This is most markedly apparent when the court admitted to being undecided before sentencing but noted that "all" it wanted to see was Brown "take responsibility" or admit guilt. We thus disagree with the state that the court would have reached the same result without considering Brown's refusal to admit guilt. The record is unclear if Brown's sentences would have been the same had this not been considered. *See Hardwick*, 183 Ariz. at 656.

**¶51**       The state also urges us to conclude that the trial court "perhaps" noted Brown's lack of remorse as an "implicit" rejection of Brown's argument that he was taking responsibility. We do not read Brown's statements that way, given that he explicitly maintained his innocence. As such, the trial court improperly considered Brown's refusal to show remorse when it sentenced Brown to the aggravated or maximum term for each count. Because this error is not harmless, we vacate Brown's sentences and remand for resentencing. *See Henderson*, 210 Ariz. 561, ¶ 18 (state must "prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence").

## MULTIPLE CONVICTIONS FOR SAME MURDER

**¶52**       Both Brown and the state agree that Brown erroneously received separate sentences for first-degree murder and second-degree murder for the death of the two passengers. We review a defendant's sentence for an abuse of discretion. *Long*, 207 Ariz. 140, ¶ 37.

**¶53**       As a result of the car crash, two passengers died. At sentencing, Brown received concurrent sentences of natural life for each first-degree murder offense, and a sentence of twenty-five years for the second-degree murder of the same victims.

**¶54**       "The crime of murder of a single victim necessarily results in one conviction and one sentence." *State v. Williams*, 232 Ariz. 158, ¶ 10

(App. 2013). When the state proves the elements for a conviction of first-degree murder—and thus proves all the elements of second-degree murder—the lesser sentence must be vacated. *See State v. Canion*, 199 Ariz. 227, ¶¶ 19-20 (App. 2000); *see also Williams*, 232 Ariz. 158, ¶ 8 (defendant cannot be convicted and sentenced for both felony murder and second-degree murder for death of one victim).

¶55 Here, Brown erroneously received a separate conviction and sentence for the first-degree murder and second-degree murder of the same victims. *See id.* We therefore vacate the second-degree-murder convictions. We direct the trial court at resentencing to pronounce one conviction and sentence of first-degree murder for each victim consistent with this opinion. *See State v. Wilson*, 253 Ariz. 191, ¶ 29 (App. 2022) (appellate court can address other issues raised if likely to recur).

## DISPOSITION

¶56 For the foregoing reasons, we affirm all of Brown's convictions except those for second-degree murder. We also vacate his sentences and remand for resentencing.

E P P I C H, Vice Chief Judge, dissenting:

¶57 I respectfully dissent because Juror 27 was an interested party in Brown's case under A.R.S. § 21-211. At the time of trial, Juror 27 was employed as a community service officer with the Sierra Vista Police Department (SVPD), and, in that position, she worked regularly with HSI—the lead investigative agency in Brown's case—by investigating and helping with "takedowns." While the majority correctly notes that Arizona courts have declined to apply *Eddington*'s categorical disqualification of a P.O.S.T.[2]-certified peace officer employed by the investigating agency to other categories of jurors, Juror 27's current, direct relationship with SVPD and HSI in investigating crimes differentiates this case from these other cases. *Cf. State v. Romero*, 258 Ariz. 237, ¶¶ 11-14 (App. 2024) (unobjected to juror was prospective employee of investigating agency); *State v. Hill*, 174 Ariz. 313, 319-21 (1993) (challenged juror and testifying officers worked for different law enforcement agencies); *State v. Jimenez*, 255 Ariz. 550, ¶¶ 3, 14-15 (App. 2023) (challenged juror was retired law enforcement); *State v. Guevara-Enriquez*, ___ Ariz. ___, ¶ 9, 576 P.3d 122, 126 (App. 2025)

---

[2]P.O.S.T. refers to the peace officer standards and training board. *See* A.R.S. § 1-215(28).

(challenged juror's husband employed by investigating agency, but did not serve in a division involving criminal investigation).

¶58 Unlike the challenged jurors in those cases, Juror 27 had direct ties to the lead investigative agency and participated in its enforcement activities. Describing her involvement, she stated, "I help out in HSI as 'bait' for several takedowns they have," "I work with several HSI agents," and "I merely watch the interviews and help with takedowns." She knew the lead investigator, Agent Chadwick of HSI, having worked in the same room as him when working on HSI cases. Juror 27 also knew of Cochise County Sheriff's Deputy Brennan—an investigator and witness in this case—because SVPD "work[s] in close relationship with the sheriff's office." Moreover, Juror 27 had a working relationship with Detective Ransford, a law enforcement officer at SVPD and HSI, who, while not a testifying witness in Brown's case, was involved in the investigation and possessed several key pieces of evidence, including six cell phones and a SIM card. By processing key evidence in connection to the crime, Detective Ransford—and by extension SVPD—was a part of the prosecution team and had a clear interest in advocating for a conviction. *See Eddington*, 228 Ariz. 361, ¶ 11.

¶59 Granted, the facts of *Eddington* differ from this case in two respects. First, Juror 27 was not a P.O.S.T.-certified peace officer. *See* A.R.S. § 1-215(28). Second, Juror 27 was not directly employed by HSI. But when examined in light of the rationale underlying the *Eddington* analysis, these are distinctions without a difference.

¶60 As to the certification question, it is not certification per se that gives rise to concerns of bias that makes one an interested person under the statute. Rather, as is apparent from the discussion in *Eddington*, it is the nature of the role a peace officer plays within an agency—direct involvement in investigation and enforcement—of which certification is merely an indicator. 228 Ariz. 361, ¶ 11. And, although Juror 27 was not a peace officer, the tasks she performed for HSI are sufficiently intertwined with investigation and enforcement to distinguish her from others working in non-enforcement support roles. As such, she was an integral part of the process of criminal prosecution. In fact, Juror 27 described herself as "work[ing] in law enforcement," working with officers and detectives, and "basically play[ing] cop." Even if these characterizations of her role were not strictly true, in assessing whether she was an interested person what matters is that she believed them to be, and that she conveyed those views

16

to others (including other jurors), thus giving rise to the appearance of bias or interest.

¶61        In addition, it matters not that Juror 27 was not directly employed by HSI.  As noted above, she was directly involved on a regular basis in their investigations and enforcement.  If that alone was not enough to trigger disqualification, SVPD's participation in the investigation of this case was.[3]

¶62        "A primary purpose of § 21-211 is to promote public confidence in the judicial system."  *Eddington*, 228 Ariz. 361, ¶ 14.  Thus, "[e]veryone participating in and observing a trial should have confidence that the trial is fair in all respects."  *Id.*  To illustrate this point, *Eddington* explains that if the jury were composed entirely of members like the challenged juror, the court must ask whether the defendant had received a fair trial.  *Id.*  Had Brown's jury consisted of twelve community service officers at SVPD who were currently investigating crimes with HSI, it is unlikely that anyone could conclude Brown had been afforded a fair trial.

¶63        One way § 21-211 helps instill public confidence in the judicial system is by "protecting the appearance of fairness."  *Id.* ¶ 8.  Importantly, a potential juror observed that Juror 27's presence on the jury was suspect, stating that he would be looking at her if he was the defendant.  This is more than a "potential" appearance of bias.  *Id.* ¶ 10.  Instead, Juror 27's presence on Brown's jury created an outward appearance of interest in the case that is disallowed by § 21-211(2) and *Eddington*, 228 Ariz. 361, ¶ 18.

¶64        Our supreme court in *Eddington* noted that its decision "d[id] not depend on the particular officer's knowledge of witnesses or facts of the case or the officer's belief in his or her ability to be fair and impartial" but seemed to instead rely on the outward appearance of interest a peace officer currently employed by the investigating agency has in a case.  228 Ariz. 361, ¶ 18.  Following this same reasoning, and because "[t]he working relationship between the prosecution and the investigating agency is the

---

[3]In any event, where, as here, the juror had overlapping responsibilities to multiple agencies involved in the investigation of the alleged offenses, restricting the *Eddington* analysis to the source of her compensation seems too thin a reed upon which to determine whether she had an interest in the case.

type of interest § 21-211(2) is meant to cover," *id.,* I would vacate Brown's convictions and sentences and remand for a new trial.